194 So.2d 885 (1967)
TEXAS ROAD BORING COMPANY OF LOUISIANA-MISSISSIPPI, Complainant-Appellant,
v.
George R. PARKER, Jr., Defendant-Appellee.
No. 44216.
Supreme Court of Mississippi.
January 30, 1967.
Suggestion of Error Overruled February 20, 1967.
Erskine W. Wells, Charles Ray Davis, Wells, Thomas & Wells, Jackson, for appellant.
Howard C. Ross, Jr., Jackson, for appellee.
PATTERSON, Justice:
This is an appeal by Texas Road Boring Company of Louisiana-Mississippi from a decree of the Chancery Court of the First Judicial District of Hinds County dismissing the bill of complaint filed by appellant which sought to enjoin the appellee from engaging in certain activities which, it was alleged, would be contrary to certain restrictive covenants in an employment contract executed between the appellant and the appellee.
*886 In March 1965 the appellee, hereinafter referred to as Parker, went to Houston, Texas and talked to Mr. Gilbert Turner, the president of the appellant corporation, hereinafter referred to as Texas Road Boring Company, about employment with the corporation. Parker was advised that if he enentered into the appellant's hire it would be necessary for him to agree to an employment non-competition covenant not to compete with the Texas Road Boring Company within the territory where Parker would work for such company for a period of two years after the termination of employment. The territorial limits of the covenant were "within a radius of one hundred miles of any city, town or village in the United States in which employee has worked for employer." This type covenant was required by the appellant from all of its managerial or supervisory employees because of the nature of the appellant's work.
Subsequently, at a conference had between the president of Texas Road Boring Company, Parker, and the division manager of the Louisiana-Mississippi Division of Texas Road Boring Company, who was an uncle of Parker, it was agreed that Parker would go to work for Texas Road Boring Company as assistant division manager of the Louisiana-Mississippi Division, and that initially he would work under the supervision of his uncle in Louisiana. The employment began on March 15, 1965, and as contemplated, Parker worked under the supervision of his uncle in and out of the Baton Rouge office, learning the methods and techniques of the horizontal boring business as well as about the equipment used.
The Texas company desired, however, to increase its operation within the state of Mississippi and to that end the appellee moved to Jackson, Mississippi, where he became the resident manager for operations within this state. A telephone listed in the name of "Texas Road Boring Company of Louisiana-Mississippi" was installed for Parker; arrangements were made for telephone answering service; an advertisement was run in the trade paper, "Daily Journal of Commerce," which had a general circulation in the state, announcing that Texas Road Boring Company was opening an office in Mississippi with Parker in charge. Parker was also provided with a list of customers with whom Texas had previously done business within the state.
The restrictive covenant was signed by Parker on April 1, 1965, pursuant to the former conversations in regard thereto, and he began the promotion of and engaged in the horizontal boring business in accord with the policies of Texas Road Boring Company. These activities included contacting a large number of persons, city officials, highway officials, heads of city water departments and contractors. The expense of contacting these officials, including favors for them, dinners, football tickets, etc., to court their goodwill was borne by his employer. Parker's efforts in obtaining business were successful. The record reflects that he performed horizontal boring jobs in forty-eight different cities, towns and villages within the state. Parker, according to his testimony, was the person who contacted the various contractors and officials in this effort to obtain business and with slight exception was the person actually responsible for obtaining contracts for boring jobs and in supervising them to completion. In addition to the municipalities where work was actually performed, Parker also worked on behalf of Texas Road Boring Company in contacting the proper authorities as prospective customers in numerous other municipalities.
Parker voluntarily terminated his employment with the Texas Road Boring Company on January 11, 1966. Prior to terminating his services, however, he had a portion of appellant's boring equipment duplicated at a foundry in Jackson, Mississippi. Also, on January 13, 1966, a new Mississippi corporation entitled "Mississippi Road Boring & Tunneling Company, Inc." was organized with Parker as its president. The articles of incorporation were actually signed on January 12, 1966, one day after Parker terminated his employment with *887 the Texas Road Boring Company. Shortly after this organization, the new corporation ran advertisements in the Daily Journal of Commerce which read as follows:
GEORGE PARKER (formerly of Texas Road Boring Co.) Announces the formation of MISSISSIPPI ROAD BORING AND TUNNELING, INC. with headquarters in Jackson, Miss. Phone 366-1896 P.O. Box 9994.
By way of further advertisement the new corporation was listed in the yellow pages of the Jackson telephone directory as "Mississippi Road Boring & Tunneling Co., Inc." giving Parker's address. Parker also mailed letters announcing the formation of his new company to various contractors and officials including those whom he had previously met while promoting the business of Texas Road Boring Company.
At the time Parker terminated his employment, a drilling rig foreman who had worked with Parker, and his entire crew, likewise terminated their employment with Texas Road Boring Company and began working for Parker's new corporation. Though denied by Parker, there was testimony to the effect that he contacted other personnel of his former employer and offered them employment with the new corporation.
Texas Road Boring Company filed suit to restrain Parker from competing with complainant, relying on the terms of the employment agreement. The restrictive portion thereof is as follows:
It is expressly understood that part of the consideration for the execution of this agreement is that for two (2) years following the termination of his employment with Employer, regardless of how such termination is brought about, he, Employee, will not engage in the business of boring, digging, or drilling horizontal holes or tunnels in the earth, either as a partner, principal, employee, stockholder, or otherwise, within a radius of 100 miles of any city, town, or village in the United States in which Employee has worked for Employer, under the terms and conditions hereof and during the term of his employment by Employer; and Employee understands that this is a material part of this agreement, and that Employer would not have hired or employed him unless this condition is a part of this agreement.
After an extensive hearing, the chancellor found, in brief, as follows:
The evidence amply shows that the Defendant is now attempting to take advantage of the fact that he was once an assistant division manager of Complainant. He has contacted certain contractors personally and by mail advising them of his break with Complainant and of the new company he has formed. The advertisement of his new company has appeared in the trade paper "Daily Journal of Commerce", and makes mention of the fact that he was formerly with Texas Road Boring  which, of course, leads the Court to believe that Defendant is endeavoring to reflect Complainant's established reputation and skill upon himself. Further, the Court must assume that Defendant has built a certain degree of good will for himself with those contractors and public utilities for whom he did jobs while in Complainant's employ, even though he was not the "alter ego" of Complainant. For this reason, if the covenant had precluded Defendant from any dealings in the boring and tunneling business for the specified time with any of the contractors or other persons, firms, corporations or political subdivisions for whom Complainant had performed boring jobs in this state during the time Defendant was Complainant's assistant division manager, the Court would have affirmed it as being valid and enforceable.
Being of the opinion that the court did not have the power to rewrite the contract, though the complainant's rights were recognized, the court denied the relief sought by *888 the complainant for the reason "* * * the employment contract in question is not valid, in that it goes beyond the bounds of propriety and reasonableness and is much too broad in its restriction. * * *" In sum, the court found that the restrictive covenant was too broad as to the geographical areas described. The court further found:
(1) Defendant is a highly capable and intelligent young man, and a prohibitive injunction against his engaging in the road-boring business would not affect his ability to make a living for himself and his family. He has worked in many fields of the contracting and construction business, and no doubt could readily find other employment adequate for his needs.
(2) The road-boring business is highly competitive, and the general public would not be deprived of any industry or services by the issuance of an injunction against the Defendant prohibiting him from engaging in the road-boring business, nor would such prohibition result in an unreasonable tendency toward the establishment of a monopoly.
From a decree dismissing the bill of complaint, the Texas Road Boring Company appeals here, assigning as error, among other things, the following:
The Court erred in holding that the non-competition covenant in the Employment Agreement went beyond the bounds of propriety and reasonableness, that it was not necessary for the protection of Appellant's business and goodwill, and that it was not valid and enforceable, either in whole or in part.
Non-competition agreements are not favored in law and in considering them, courts recognize there are three major aspects to be looked to: the rights of the employer, the rights of the employee, and the rights of the public. The chancellor's finding, which was supported by evidence, eliminates from consideration here the rights of the employee and the rights of the public. He found the enforcement of this contract would not affect the employee's ability to make a living, and further, that the rights of the public would not be affected, as the business was competitive and there was no tendency toward the establishment of a monopoly.
The question for consideration is thus reduced to the rights of the employer under the contract. In approaching this problem we note initially that the parties to the contract were businessmen bargaining at arm's length with each other in an atmosphere free of any undue influence or advantage to the employer.
This Court has consistently enforced covenants in employment contracts which restricted competition within specified territorial limitations. With but one exception the territorial limits set forth in the contract were upheld as written. In the excepted case a territorial limitation was found to be unreasonable and the same was reduced to an area which the Court determined to be reasonable. This unquestionably varied the contract as written between the parties, yet the Court's action seems to be in accord with the majority of modern cases involving territorial limitations found to be excessive.
In Wilson v. Gamble, 180 Miss. 499, 510, 177 So. 363, 365 (1937), this Court adopted the following rule:
It is well settled that "a bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent," is valid "unless effecting, or forming part of a plan to effect, a monopoly."
The Court upheld a restrictive covenant prohibiting an assistant physician from engaging in the practice of his profession in a *889 city or within five miles of the corporate limits thereof for a period of five years from the date of termination of contract, finding the limitation of time and space in the contract to be reasonable.
In Donahoe v. Tatum, 242 Miss. 253, 261, 134 So.2d 442, 445 (1961), a suit involving a restrictive non-competitive covenant, this Court found the limitation of time and space therein to be reasonable, citing Wilson, supra, but expanding the rule somewhat by stating:
It is the law's function to maintain a reasonable balance in this area. This "requires us to recognize that there is such a thing as unfair competition by an ex-employee as well as by unreasonable oppression by an employer." The circumstances of each case will be carefully scrutinized to determine whether it falls within or without the boundary of enforceability.
The contract found to be reasonable forbade competition from the employee in Hinds County for a period of five years.
In Frierson v. Sheppard Bldg. Supply Company, 247 Miss. 157, 172, 154 So.2d 151, 156 (1963), pertaining to restrictive non-competitive contracts, this Court held:
These restrictive contracts are in restraint of trade and individual freedom and are not favorites of the law. But they are valid unless unreasonable, and when reasonable, the courts will not hesitate to hold the parties to their contracts. But it is the contract the parties themselves made that measure the restriction, both as to scope and time.
The restrictive covenant not to compete for a period of two years within a radius of fifty miles from the office of his employer (in the city of Jackson) was held by this Court to be reasonable and enforceable.
In Bagwell v. H.B. Wellborn & Company, 247 Miss. 564, 156 So.2d 739 (1963), the Court held to be valid and binding upon the parties a restrictive covenant with a time limitation of two years and a space limitation of a seventy-five mile radius from the corporate limits of the city of Meridian; and in Redd Pest Control Company v. Heatherly, 248 Miss. 34, 157 So.2d 133 (1963), the Court held a non-competitive covenant to be reasonable as to a two-year time limitation from the date of termination of employment and a geographical limitation of fifty miles from the city of Tupelo, but found from the circumstances there that a territorial limitation which included the entire state of Mississippi was unreasonable. The recurrent theme of these cases is that restrictive covenants are not favored in law; the employer has the burden of proving their reasonableness; and the reasonableness as to time and space limitations must be determined from the facts of each case.
The evidence in this case discloses, and in accord therewith the chancellor found, that the defendant below was attempting to take advantage of the fact that he was once an assistant division manager of the complainant. This is obvious as the defendant copied a part of complainant's machinery, hired his former employer's personnel, and contacted the same customers he had met and become acquainted with while in the employ of the complainant in order to promote his own business, the Mississippi Road Boring & Tunneling, Inc., of which he was president. The course of the defendant's former employment with Texas Road Boring Company carried him to every corner of the state and most municipalities in between. The business and goodwill of Texas Road Boring Company was largely dependent upon the contractor, customer relationship as is the competitive business of Mississippi Road Boring & Tunneling, Inc. We are of the opinion, in view of the defendant's activities over the entirety of the state of Mississippi in promoting Texas Road Boring Company, that the contract is not unreasonable as to its territorial limitations. To hold otherwise, there being no hardship or public policy questions involved, would *890 be only to destroy an otherwise valid contract entered by businessmen, with the best interest of their respective businesses and employment in mind, and to reward the unwarranted violation thereof by the defendant. We do not comment upon the time factor in the contract as no point is raised by the parties in regard thereto.
We are of the opinion the trial court erred in not enjoining the defendant from activities in violation of such contract.
Reversed and remanded for the issuance of an injunction by the trial court.
ETHRIDGE, C.J., and JONES, INZER, and ROBERTSON, JJ., concur.