599 So.2d 971 (1992)
EMPIREGAS, INC. OF KOSCIUSKO
v.
Ronald M. BAIN and Fair Propane Gas Systems, Inc.
No. 89-CA-0059.
Supreme Court of Mississippi.
May 6, 1992.
*973 David Michael Huggins, Turner Onderdonk & Kimbrough, Chatom, Ala., for appellant.
Kenneth Bridges, Louisville, for appellee.
Before ROY NOBLE LEE, C.J., BANKS and McRAE, JJ.,
McRAE, Justice, for the Court:
Empiregas, Inc. of Kosciusko appeals an October 6, 1988, judgment of the Chancery Court of Attala County. We affirm the Chancellor's decision, finding that Ronald Bain was terminated and discharged without cause and that the non-competition clause of the employment agreement between Empiregas and Bain is null and void. We further find that the Chancellor properly dismissed Empiregas' complaint against Bain's new employer, Fair Propane Gas Systems, Inc., and awarded Bain other relief prayed for. However, we dismiss Bain's cross-appeal which was not properly filed under Mississippi Supreme Court Rule 4.

I.
Appellant Empiregas, Inc., of Kosciusko, owned by Empire Gas Corporation of Lebanon, Missouri, is engaged in the sale of liquified petroleum (L.P.) gas to both residential and commercial customers in and around Kosciusko and Attala County, Mississippi.
Ronald Bain was hired by Empiregas in September, 1983, as a retail store manager. On October 12, 1984, in order to receive a promotion, he was compelled to sign an employment agreement with Empiregas which contained a non-competition clause, restricting him for a period of three (3) years after the termination of the contract from involving himself with any competitor, which operated within a fifty (50) mile radius of any location at which he had worked within twenty-four (24) months prior to termination. It placed further restrictions on the solicitation of customers for a three-year period.
Bain was terminated on February 2, 1988, at a regional meeting of retail managers held in Bessemer, Alabama. Upon his written request, the reasons for his termination were set forth in a letter from Robert L. Wooldridge, President of Empire Gas Corporation, dated March 25, 1988. It was stated therein only that Bain had "repeatedly violated" paragraph 2 of his employment agreement with the company, which provides in relevant part that:
The Employee shall willingly obey all of the Employer's rules, regulations and special instructions applicable to him and shall be loyal and faithful at all times, constantly endeavoring to improve his ability and knowledge of the business in an effort to increase the value of his services for the mutual benefit of the Employer and himself.
Empiregas asserts, therefore, that Bain was terminated on the grounds of "insubordination."
Upon what incidents did Empiregas base its charges of "insubordination" against Bain? The record contains references and testimony to two specific incidents, both involving "words" between Bain and Empire Gas Corp.'s vice-president and regional manager, Charles Lee. The first incident occurred in January, 1988. Lee called Bain at the Empiregas office late on a Friday afternoon. Finding him absent, Lee dialed Bain's home telephone number and hung up when Bain answered. On Saturday morning, Lee again called Bain and reprimanded him for leaving the office a half hour early the day before. Lee expressed dissatisfaction with Bain's explanation that he had left to put on dry clothes after spending the cold, wet January afternoon in two inches of mud under a new customer's house to repair pipes in order to facilitate conversion from electric heat to propane. During a heated telephone conversation, Lee told Bain he was fired, but then told him they should try to work out their differences.
On February 2, 1988, at a meeting of retail managers in Bessemer, Alabama, Lee asked Bain and the other managers to "run a route" the following Saturday. Of the fourteen managers, Bain alone stated that he did not plan to do so and attempted to *974 explain to Lee that it would not be in his store's best interest to do so. Lee fired him on the spot.
After he was fired, Bain sought other employment in the vicinity. On February 22, 1988, he was hired by Fair Propane Gas Systems, Inc. to work as retail manager of its Ackerman, Mississippi store, approximately thirty-six miles from Kosciusko. Fair Propane services some customers in Attala County, and company president, John Fair, expressed long-range plans to expand in that area and eventually open a retail office in Kosciusko.
Immediately after Bain was fired, nineteen Empiregas customers switched to Fair Propane for L.P. gas service. As many as sixteen of these customers were relatives, friends and neighbors of Bain and his family.
When Empiregas learned that Bain had gone to work for Fair Propane, it notified Bain and Fair Propane President John Fair by letters dated March 4, 1988, of its intent to enforce the non-competition clause. On May 11, 1988, Empiregas then filed a Verified Complaint for Temporary Restraining Order and Other Injunctive Relief, seeking to enjoin Bain and Fair Propane from soliciting any of Empiregas' customers. A hearing was held on Empiregas' request on May 27, 1988. Pursuant to a stipulation by the parties of customers who had been lost by Empiregas to Fair Propane, the Chancellor granted the order until a hearing could be held on the merits of the complaint, enjoining Bain and Fair Propane from acquiring any additional customers from Empiregas and requiring other measures to protect Empiregas' interests.
A final hearing on the merits was held on June 28, 1988. In his August 26, 1988, opinion, the Chancellor found that Bain had been terminated without cause and therefore, Empiregas could not enforce the non-competition provision of his employment agreement. In his Final Order entered on October 6, 1988, the Chancellor further found that the non-competition provision of the employment agreement was null and void, enjoined Empiregas from enforcing its provisions, and ordered Empiregas to pay Bain $4,656.86 pursuant to his counterclaim as well as attorneys fees and costs.

II.
Mississippi long has adhered to the common-law rule of terminability at will, wherein an employment relationship may be terminated at will by either party when the employment contract does not specify the duration or term of the employment. Perry v. Sears Roebuck and Co., 508 So.2d 1086, 1088 (Miss. 1987), citing Butler v. Smith & Tharpe, 35 Miss. 457, 464 (1858). Therefore, "either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." Kelly v. Mississippi Valley Gas Company, 397 So.2d 874, 875 (Miss. 1981). Although we recognize that an employee may be even fired for a "wrong reason," we address the nature of Bain's termination so that he may be afforded all equitable relief to which he is entitled.
Empiregas asserts that Bain was fired on the grounds of insubordination, citing in particular his refusal to follow the orders of his regional manager, Charles Lee. Bain contends that his termination was not for just cause, rather, that it "was vindictive, arbitrary, in bad faith and systematically following a scheme to fire or run off all retail managers who were employed by Empire when [Lee] became Regional Manager."
The Chancellor heard testimony from Bain, Lee and three retail managers who were present at the regional meeting in Bessemer, Alabama, where Bain was fired, on February 2, 1988. Looking particularly at the events that occurred over the weekend preceding the Bessemer meeting, the Chancellor observed that "storm clouds were gathering and Mr. Lee was determined to be the winner." Based on his findings of fact, the Chancellor, in his Final Order, found that Bain had been "terminated and discharged without cause."
We have stated that "an employee is bound to obey the direct order of his master or risk being discharged for insubordination." *975 Fields v. Johnson, 252 Miss. 705, 706, 173 So.2d 428, 429 (Miss. 1965). We find, however, that there is substantial evidence in the record to support the findings of the Chancellor. Looking at the broader picture, it can be reasonably inferred that Bain had worked in his employer's best interests during his tenure with Empiregas. The record shows that his Kosciusko operation was the most profitable in the region, and third, in terms of total production rankings. Even in Bain's final days with Empiregas, we find no evidence that he abandoned his employer's best interests or otherwise acted in contravention of the company's rules and regulations.

III.
When considering the enforceability of restrictive employment agreements, we review the entire record and "the evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact, must be accepted." Sta-Home Health Agency v. Umphers, 562 So.2d 1258, 1263 (Miss. 1990), quoting Culbreath v. Johnson, 427 So.2d 705, 707 (Miss. 1983). We will not disturb the findings of the lower court when they are supported by substantial evidence unless the Chancellor has abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bowers Window and Door Co. v. Dearman, 549 So.2d 1309 (Miss. 1989), citing Culbreath, 427 So.2d at 707-708. Bullard v. Morris, 547 So.2d 789, 791 (Miss. 1989).
Non-competition agreements have been viewed by this Court as "restrictive contracts [which] are in restraint of trade and individual freedom and are not favorites of the law." Frierson v. Sheppard Building Supply, Co., 247 Miss. 157, 154 So.2d 151, 156 (1963); Texas Road Boring Company of Louisiana-Mississippi v. Parker, 194 So.2d 885, 888 (Miss. 1967). Only when such agreements are reasonable, will they be considered valid and upheld by this Court. Frierson, 154 So.2d at 156. However, when the Chancellor finds that the employee's termination was arbitrary, capricious or in bad faith, he can "lend the hand of equity" in refusing to enforce the agreement. Id. at 155.
The validity and therefore, the enforceability of a non-competition provision is largely predicated upon the reasonableness and specificity of its terms, primarily, the duration of the restriction and its geographic scope. Redd Pest Control Company v. Heatherly, 248 Miss. 34, 157 So.2d 133 (1963). The burden of proving the reasonableness of these terms is on the employer. Texas Road Boring Co., 194 So.2d at 889. However, our inquiry does not end there.
In Donahoe v. Tatum, 242 Miss. 253, 261, 134 So.2d 442, 445 (1961), we acknowledged that the need to balance the rights of employers and employees "requires us to recognize that there is such a thing as unfair competition by an ex-employer as well as by unreasonable oppression by an employer." In so doing, we revitalized the rule first articulated in Wilson v. Gamble, 180 Miss. 499, 177 So. 363, 365 (1937), that non-competition agreements are only valid "within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent... ." (emphasis added).
In Texas Road Boring Co., 194 So.2d at 888, we reiterated the principle that non-competition agreements are not favored and that when asked to consider the enforceability of such provisions, "courts recognize that there are three major aspects to be looked to: the rights of the employer, the rights of the employee, and the rights of the public." The record before us indicates that competition in the L.P. gas market in both Kosciusko and Attala County is quite healthy, thus we do not perceive a threat to the public of monopoly or unfair competition. We therefore look to a balancing of the respective rights of the employee and employer. Donahoe, 134 So.2d at 445.
*976 Empiregas has an interest in protecting its customer base, its goodwill and its ability to succeed in a competitive market. The company asserts that it has lost as many as 2.3% of its customers and 3% of its profits. The parties stipulated that nineteen customers were lost from its customer base of eight hundred to as many as twelve hundred accounts. The evidence in the record indicates that the majority of the defecting customers were friends, relatives or neighbors of Bain's who would have left even if Bain had not gone to work for a competitor. Moreover, other factors such as competitive pricing, quality of service and normal attrition rates all come into play, adding to the speculative nature of the damages Empiregas claims and seeks to prevent through its attempt to enforce the non-competition agreement.
Bain's interests also must be considered. As the Ohio Supreme Court stated in the landmark case, Arthur Murray Dance Studios of Cleveland v. Witter, 62 Ohio L.Abs. 17, 105 N.E.2d 685, 693 (1952), "the restraint sought to be imposed is one which restricts the exercise of a gainful occupation ... ." and accordingly found the disputed restriction unreasonable. We note that Bain had only a high school education and prior to working for Empiregas, had done factory and pipeline construction work. An injury to his arm precluded a return to manual labor. His opportunities for other employment were limited and his efforts to find other jobs were unsuccessful. He was unable to collect unemployment insurance because of his termination for alleged insubordination. His alternatives were to work for Fair Propane in Ackerman, or to find another job outside the fifty-mile radius, which would require either a lengthy commute or uprooting his family from its home. An equitable balancing of the rights of the employer and the employee leads us to conclude that enforcement of the agreement would have a far more oppressive effect on Bain than its non-enforcement would have on Empiregas. Moreover, as we have indicated, when an employer terminates an employee in bad faith, the terms of a non-competition agreement will not be enforced.
In Thames v. Davis & Goulet Insurance, Inc., 420 So.2d 1041, 1043 (Miss. 1982), we held that "this Court is committed to the general rule requiring the ex-employer in a case such as this to demonstrate to the trial court the economic justification, the reasonableness, of the restraint which is sought to be imposed." In Thames, we noted that the former employer "did not plead in its complaint any special reason or necessity why the contract should be enforced." Id. Likewise, we now find that Empiregas pleaded only a general loss of profits and business opportunities and focused on the contract and proof of Bain's violation of its provisions. At trial, the sole reason Empiregas' regional manager Lee gave for the necessity of the non-competition provision was "[t]o keep the retail manager from leaving our employment and taking our customers away that we have obtained either through him or other employees."

IV.
In his Final Order, the Chancellor terminated in its entirety Empiregas' complaint against Fair Propane, including its claim that the company's President, John Fair, induced Bain to breach the non-competition clause of the contract. Because the Chancellor made no specific findings of fact, we must presume that those issues were resolved in favor of the Appellee, Fair Propane. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985).
Our careful review of the record provides no evidence to substantiate Empiregas' claim that Fair Propane acted to "induce" Bain to breach the non-competition provision. Fair Propane did not lure Bain away from Empiregas; rather, Bain approached Fair Propane after trying unsuccessfully to find other employment in the vicinity.
John Fair, President of Fair Propane, was aware of the non-competition agreement when he hired Bain. He testified that he consulted informally with his attorney as well as several former Empiregas employees and others who had worked under similar contracts and concluded that "it *977 was a good chance that it was unenforceable." Nevertheless, Fair took measures to avoid litigation and protect Empiregas' interests, instructing Bain not to solicit business from any of his former customers and requiring employees to make inquiry about the current supplier of any prospective customer, even before Empiregas filed its request for a temporary restraining order.
Empiregas also bases its claims against Fair Propane, in part, on its assertions that it has lost business because Bain's bonus is based on the number of new customers he brings to the company. We find that because of the highly competitive nature of the L.P. gas business and the evidence that most of the defecting customers were friends, relatives or neighbors of Bain, the Fair Propane bonus arrangement had, at best, a minimal impact on Empiregas' future profits or losses.

V.
In his Final Order, the Chancellor awarded Bain $4,656.86, or 5% of the profits of Empiregas of Kosciusko, Inc. for calendar year 1987, pursuant to his employment contract. We recognize that the contract provides that "[s]hould the employment relationship be terminated (except by death) by either party prior to May 1st of any year, the Retail Manager shall not be entitled to receive the annual bonus for the preceding calendar year." Continued employment and good behavior therefore served as consideration for the agreement. However, it was Empiregas which breached the duty which the parties had to each other to deal in good faith by firing Bain without good cause. Accordingly, Bain was entitled to receive the bonus which had accrued.

VI.
On cross-appeal, Bain asserted that the Chancellor erred in not awarding him sufficient damages for his wrongful termination from Empiregas. He sought an additional $4,392.50 in lost commissions, the difference between his earnings at Fair Propane and what he would have earned had he still been employed by Empiregas. However, notice of his cross-appeal was not properly filed pursuant to Mississippi Supreme Court Rule 4. Accordingly, we dismiss the cross-appeal pursuant to Mississippi Supreme Court Rule 2(a)(1).

VII.
Accordingly, we affirm the Chancellor's findings on all issues properly before us and dismiss the cross-appeal.
AFFIRMED ON DIRECT APPEAL; DISMISSED ON CROSS-APPEAL.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.