**HERRING GAS COMPANY, INC., and Edward G. Herring, Plaintiffs,**

v.

**W. Otto MAGEE and Michael B. Burris, Defendants.**

Civ. A. No. 3:92–CV–0264BN.

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 22, 1993.

Lindsay C. Patterson, John L. Maxey, Maxey Pigott Wann Begley, Jackson, MS, for plaintiffs.

Luke Dove, Dove Chill Calhoun Williamson, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court pursuant to Rules 56 and 57 of the Federal Rules of Civil Procedure on cross-motions for summary judgment of Plaintiffs Herring Gas Company, Inc., ("Herring Gas") and Edward G. Herring ("Herring") and Defendants W. Otto Magee and Michael B. Burris. Having considered the motions and supporting and opposing memoranda and attachments thereto, the Court renders the following findings of fact and conclusions of law.

1. Defs.' Mot. Summ. J. Ex. B.

## I. BACKGROUND

Herring, a Mississippi resident, is the principal stockholder of Herring Gas, a Mississippi corporation. Herring Gas purchases propane gas in bulk and sells it and related appliances to customers through retail outlet stores located throughout Mississippi and Louisiana. Herring Gas employees at each store contact potential customers, establish customer accounts, and sell and deliver the propane to customers in the areas surrounding each store. The Mississippi operations generate annual sales of approximately 10,000,000 gallons of propane, while the annual sales in Louisiana total approximately 2,000,000 gallons.

In 1985, Herring Gas operated exclusively in Mississippi. In order to expand operations into Louisiana, Herring formed Herring Gas Company of Louisiana, Inc., ("the Louisiana company"), a Louisiana corporation. The initial stockholders of the Louisiana company were Herring, Rubin Miley, and Defendants Magee and Burris. Both Magee and Burris are residents of Louisiana. The Louisiana company operated in the same manner as Herring Gas, selling propane through retail outlet stores located throughout Louisiana.

At some point, it was determined that the Louisiana company should be merged with Herring Gas. To facilitate this merger, Burris sold his shares in the Louisiana company to Magee in exchange for a promissory note in which Magee promised to pay to Burris cash equal to 25% of the proceeds of any sale of his shares of Herring Gas. Magee then sold all of his shares of the Louisiana company (including those purchased from Burris) to Herring Gas in exchange for eight shares of Herring Gas. These eight shares constituted approximately five per cent of all outstanding shares of Herring Gas after the merger.

On April 7, 1986, Magee entered into an employment agreement[1] with Herring Gas whereby Herring Gas employed Magee as a salaried retail sales manager for a period

of five years. The employment agreement also included a stock bonus provision by which Magee annually would receive additional shares of Herring Gas stock such that after each of the five years he would own an additional one per cent of the total outstanding shares. In this manner, Magee would own a total of ten per cent of the total outstanding shares of Herring Gas at the end of the five-year period.[2] Herring Gas and Magee also entered into a Contract for Purchase and Sale of Stock[3] on April 7, 1986, by which Herring Gas agreed to purchase all shares held by Magee in the event of his death, disability, or termination, at a price determined by a fixed formula.

On February 28, 1990, Herring, Herring Gas, Magee, and Burris entered into an agreement[4] ("the termination agreement") for Herring Gas to purchase the shares held by Magee and terminate his employment with Herring Gas. Pursuant to the termination agreement Herring Gas paid Magee $22,500 and Burris $7,500 in cash at closing and executed promissory notes in the amount of $367,403.25 to Magee and $122,467.75 to Burris. Both notes are payable in equal monthly installments over ten years and bear interest at the rate of 10% per annum. In exchange for the cash and promissory notes, Magee returned all of his shares of Herring Gas. Additionally, Magee and Burris released Herring Gas and Herring from all obligations and claims arising from the employment agreement and the Contract for Purchase and Sale of Stock.

The termination agreement also includes the following covenant not to compete:

> Herring Gas Company, Inc., agrees to pay W. Otto Magee the additional amount of Five Hundred Dollars ($500.00) per month for one hundred twenty (120) months beginning March 25, 1990. For that additional amount and the good and valuable considerations set forth, W. Otto Magee and Michael B.

Burris agree, promise and covenant that for seventy-two (72) months from the date of closing, neither of them will, without the express written consent of Herring Gas Company, Inc., Herring Gas Company, Inc., of Louisiana, or Edward G. Herring, directly or indirectly, within fifty (50) miles of any location of Herring Gas Company, Inc., Herring Gas Company, Inc., of Louisiana, or any other affiliate of Herring Gas Company, Inc., engage in any activity competitive with or adverse to Herring Gas Company, Inc., business, whether alone, as a partner or as an officer, director, employee or stockholder of any other corporation or as a trustee, fiduciary or other representative of any other activity. The employee shall not divulge, communicate, use to the detriment of Herring Gas Company, Inc., or for the benefit of any other business, firm, person, partnership, corporation, or otherwise misuse any confidential information, data, trade secrets, customer lists, or personnel information of Herring Gas Company, Inc. W. Otto Magee and Michael B. Burris hereby acknowledge that the provisions of this paragraph constitute reasonable restrictions....

> If any court shall determine that the duration or geographical limit of any restriction contained in this paragraph is unenforceable, it is the intention of the parties that the restrictive covenants set forth herein shall not thereby be terminated but shall be deemed amended to the extent required to render it valid and enforceable....

Defs.' Mot. Summ. J. Ex. C at para. 6.

On April 6, 1992, an attorney acting on behalf of Magee and Burris sent to Herring's attorney a letter in which he refers to a Louisiana statute, which makes covenants not to compete enforceable only under certain circumstances and only for periods not exceeding two years,[5] and states

---

**2.** The employment agreement was modified by a written agreement dated January 25, 1988. These modifications are immaterial to this case.

**3.** Defs.' Mot. Summ. J. Ex. A.

**4.** Defs.' Mot. Summ. J. Ex. C.

**5.** The statute provides in part:

 A. Every contract or agreement, or provision thereof, by which anyone is restrained

that "Mr. Magee desires to explore his employment options including possibilities within the propane gas industry. It would appear so obvious to me that a declaratory judgment action would be favorable to my client that I would ask your client to advise whether there is a potential controversy if my client should explore options in that industry." Pls.' Mot. Summ. J. Ex. D.

Herring and Herring Gas responded to the letter on May 6, 1992, by filing this action against Magee and Burris. Plaintiffs seek a declaratory judgment that the covenant is fully enforceable against Defendants and request that the Court enjoin Defendants from entering into any business in competition with Plaintiffs. Defendants have counterclaimed against Herring Gas, seeking a declaratory judgment that the covenant is unenforceable in Louisiana because it exceeds the Louisiana statutory limit of two years for such covenants, that the geographic limitation in Mississippi is unreasonable and should be reformed, and that Defendants are entitled to receive all or a portion of the remaining payments due under the covenant.

On June 5, 1992, the United States Magistrate Judge granted a motion by Plaintiffs to pay the $500 due monthly under the covenant not to compete into the registry of the Court rather than to Magee. This Court denied Defendants' Objection to that Order on July 20, 1992. The action now has been submitted by the parties for decision on cross-motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State University*, 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving

from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.

B. Any person, including a corporation and the individual shareholders of such corporation who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with the employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of the employment.

. . . .

La.Rev.Stat.Ann. § 23:921 (West Supp.1992).

party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. APPLICABLE LAW

■ Because the Court is sitting in diversity jurisdiction, the Court will apply the choice of law rules of the forum state, Mississippi. *Allsion v. ITE Imperial Corp.,* 928 F.2d 137, 138 (5th Cir.1991) (citing *Erie R. Co. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Mississippi choice of law rules recognize that parties may legitimately control the choice of substantive law in a contract dispute as long as the state whose law is selected bears a reasonable relation to the transaction. *FMC Finance Corp. v. Murphre,* 632 F.2d 413, 418 (5th Cir.1980) (citing Miss. Code Ann. § 75–1–105(1) (1972)). The termination agreement recites that it "shall be subject to and governed by the laws of the State of Mississippi," Defs.' Mot. Summ. J. Ex. C at para. 7.

■ Mississippi clearly bears a reasonable relation to the termination agreement. Two of the four parties to the termination agreement, Herring and Herring Gas, are Mississippi residents. The termination agreement was executed in Mississippi. Moreover, the termination agreement, through the covenant not to compete, specifically restricts the rights of Defendants to do business in Mississippi as well as Louisiana. Indeed, the sales of Herring Gas in Mississippi are five times greater than those in Louisiana, and Mississippi contains many more of the Herring Gas retail stores than does Louisiana. The covenant not to compete thus restricts the future commercial activities of Defendants far more in Mississippi than it does in Louisiana.

Defendants nevertheless argue that the Louisiana statute expresses Louisiana public policy and that a Mississippi court will not "enforce" Mississippi substantive law in another state if such law offends the stated public policy of that state. Mississippi courts, of course, cannot "enforce" Mississippi law in any state other than Mississippi. The Court thus will construe Defendants' argument to say that a Mississippi court will not apply Mississippi substantive law to a dispute in which another state has an interest greater than that of Mississippi when application of Mississippi law would offend a fundamental policy of that state. Such is the rule articulated by Section 187(2)(b) of the Restatement (Second) of Conflicts of Laws.

Section 187 provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue [e.g., enforceability], unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a *materially greater* interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local [substantive] law of the state of the chosen law.

Restatement (Second) of Conflicts of Laws ("Restatement") § 187 (1969) (emphasis added).

Although the Mississippi Supreme Court has not expressly addressed Section 187, that Court has embraced Sections 6 [6], 188 [7], and 193 [8] of the Restatement. The United States Court of Appeals for the Fifth Circuit relied on such precedent in incorporating Section 187(1) into its *Erie* application of Mississippi law in *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 906 F.2d 158, 167–68 (5th Cir.), *modified on other grounds*, 914 F.2d 695 (5th Cir.1990). The Court finds that if the Mississippi Supreme Court were presented with the question, it would adopt as its choice of law rule in this situation the rules set forth in Section 187. The Court finds, however, that even if Mississippi choice of law rules include Section 187, Section 187(2)(b) is of no avail to Defendants because Louisiana does not have a materially greater interest in the enforceability of the covenant not to compete and, absent the choice of law provision, would not be the state of the applicable law under Section 188.

As noted above, two of the parties to the termination agreement are Mississippi residents, the termination agreement was executed in Mississippi, and the covenant not to compete restricts the rights of Defendants to do business in Mississippi to a greater degree than it does in Louisiana. Although Defendants are residents of Louisiana and their rights to conduct business in Louisiana are restricted, these Louisiana contacts are not sufficient to provide Louisiana with a *materially greater* interest than that of Mississippi in the enforceability of the covenant not to compete. Such Louisiana contacts give that state, at most, an interest *equal* to that of Mississippi. A consideration of the factors enumerated in Section 188 similarly fails to point to the application of Louisiana rather than Mississippi law.[9] For the foregoing reasons, the Court will apply Mississippi substantive law to this dispute. The Louisiana statute thus has no bearing on the Court's analysis.

## IV. ENFORCEABILITY UNDER MISSISSIPPI LAW

 Since Mississippi rather than Louisiana law governs the termination agreement, the Court will determine whether the

---

**6.** Section 6 provides that when the forum state lacks a statutory directive as to choice of law, a court should consider the following factors in its choice of law determination: (a) the relevant needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement § 6. The Mississippi Supreme Court expressly adopted § 6 in *Mitchell v. Craft*, 211 So.2d 509, 512 (Miss.1968).

**7.** Section 188 lists the contacts relevant under § 6 to a choice of law determination when considering a contract that does not contain an effective choice of law provision. These are: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue. Restatement § 188. The Mississippi Supreme Court cited § 188 with approval in *Boardman v. United Services Automobile Ass'n*, 470 So.2d 1024, 1032–34 (Miss.1985).

**8.** Section 193 governs choice of law determinations concerning disputes arising under insurance contracts. The Mississippi Supreme Court expressly adopted § 193 in *Boardman*, 470 So.2d at 1033.

**9.** *See supra* note 7.

covenant not to compete is enforceable under Mississippi law. Although Mississippi law does not favor covenants not to compete, such covenants will be enforced if the party seeking enforcement proves that they are reasonable. *Thames v. Davis & Goulet Ins., Inc.,* 420 So.2d 1041, 1043 (Miss.1982) (quoting *Texas Rd. Boring Co. of Louisiana–Mississippi v. Parker,* 194 So.2d 885, 889 (Miss.1967)). In determining reasonableness, the Mississippi Supreme Court has focused primarily on three major aspects: the rights of the employer, the rights of the employee, and the rights of the public. *Id.* (quoting *Texas Rd. Boring,* 194 So.2d at 888). Reasonableness as to time and space limitations must be determined from the facts of each case. *Id.* (quoting *Texas Rd. Boring,* 194 So.2d at 889). If a court finds that the limitations contained in a covenant not to compete are unreasonable, then the court will modify the limitations so that they are reasonable. *Redd Pest Control Co. v. Heatherly,* 248 Miss. 34, 157 So.2d 133, 135–36 (1963) (reducing a statewide geographic restriction to that of an area within fifty miles of Tupelo, Mississippi).

■ In this case, Defendants agreed not to engage in any activity competitive with or adverse to Herring Gas "within fifty (50) miles of any location of Herring Gas Company, Inc., Herring Gas Company, Inc., of Louisiana, or any other affiliate of Herring Gas Company, Inc.," within six years from February 28, 1990. Defendants assert that the space limitation is unreasonable as written because of its ambiguity. Defendants maintain that the limitation can be read to preclude Defendants from engaging in competitive activity within fifty miles of any Herring Gas location established after the date of the termination agreement or within fifty miles of any customer of Herring Gas. The Court does not so read the space limitation. Instead, the Court finds that in order for the limitation to be reasonable, it must be read to preclude Defendants from engaging in competitive activity within a fifty-mile radius of any Herring Gas retail store in operation as of February 28, 1990. The Court has before it undisputed testimony that on that date Herring Gas operated retail stores near Meadville, Brookhaven, Monticello, Hazelhurst, Gloster, Magnolia, Prentiss, Port Gibson, Carthage, and Natchez in the State of Mississippi, and near Franklinton, Clinton, and Jenna in the State of Louisiana.[10]

■ This construction of the space limitations best balances the interests of the employer, the employee, and the public. The primary right of the employer is that of "protecting the business from loss of customers by the activities of the former employees who have peculiar knowledge of and relationships with the employer's customers." *Redd Pest Control,* 157 So.2d at 136. It is clear that Defendants could not have acquired through Magee's employment such knowledge or relationships with Herring Gas customers anywhere other than in the areas surrounding the Herring Gas retail stores in operation at the time the parties entered the covenant not to compete. Accordingly, a broader construction of the space limitations is not necessary to protect the legitimate interests of Herring Gas.

The construction adopted by the Court also protects the interests of Defendants. Their primary interest is that of avoiding undue hardship and protecting their ability to make a living. *Donahoe v. Tatum,* 134 So.2d 442, 444 (Miss.1961); *Texas Rd. Boring,* 194 So.2d at 888. Plaintiffs have shown that Burris's primary employment is that of a certified public accountant.[11] There is nothing in the covenant not to compete that would prevent him from continuing in this occupation. Although Magee has been involved in the retail sale of propane gas for approximately thirty years, Plaintiffs have shown that he has

---

**10.** Herring Dep. at 30–31 & Herring Dep. Ex. A, Defs.' Mot. Summ. J. Ex. E. There apparently is some question regarding whether on that date Herring Gas operated retail stores in Purvis, Mississippi, and Ferriday, Louisiana. *Id.*

**11.** Burris Dep. at 2, Pls.' Mot. Summ. J. Ex. F.

**1246**

obtained a license to sell life insurance.[12] Moreover, under the terms of the termination agreement Magee is to receive annual payments of $48,740, plus interest, from Herring Gas through March 25, 2000, of which $6,000 is consideration for the covenant not to compete. Finally, Defendants are free to engage in competitive activities in any part of Mississippi or Louisiana that does not fall within the construction of the covenant not to compete adopted by the Court. Under these circumstances, the Court finds that the space limitations contained in the covenant not to compete would not work an undue hardship on Burris or Magee.

The construction adopted by the Court protects the interests of the public, as well. The primary interests of the public are to avoid the establishment of a monopoly and to ensure competition and the availability of adequate services. *Donahoe,* 134 So.2d at 444–45 (citing *Wilson v. Gamble,* 180 Miss. 499, 177 So. 363 (1937)); *Texas Rd. Boring,* 194 So.2d at 888. Plaintiffs have shown that Herring Gas has thirteen competitors in the areas encompassed by the construction adopted by the Court.[13]

The Court finds that its construction of the space limitations contained in the covenant not to compete, which precludes Defendants from engaging in activities competitive with or adverse to Herring Gas within fifty miles of any retail store operated by Herring Gas as of February 28, 1990, comports with the requirements of reasonableness under Mississippi law. Defendants do not challenge the reasonableness of the six-year time limitation of the covenant not to compete under Mississippi law, and the Court finds it to be reasonable.

Accordingly, the Court finds that the covenant not to compete, as interpreted herein by the Court, is enforceable and that Plaintiffs are entitled to a declaratory judgment to that effect.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Motion for Summary Judgment of Plaintiffs Edward Herring and Herring Gas Company, Inc., is granted, and that the Court shall issue a declaratory judgment that the covenant not to compete contained in the February 28, 1990, agreement between Plaintiffs and Defendants Otto Magee and Michael Burris is valid and enforceable as interpreted by the Court in this Opinion.

IT IS FURTHER ORDERED that Defendants Otto Magee and Michael Burris are hereby enjoined for a period of six years from February 28, 1990, from engaging in any activity competitive with or adverse to Herring Gas Company, Inc., within fifty miles of any location, whether in Mississippi or Louisiana, in which Herring Gas Company, Inc., operated a propane gas retail store as of February 28, 1990.

IT IS FURTHER ORDERED that the Motion of Defendants Otto Magee and Michael Burris for Summary Judgment is denied.

IT IS FURTHER ORDERED that the funds paid by Plaintiff Herring Gas Company, Inc., into the registry of the Court pursuant to the June 8, 1992, Order of the Magistrate Judge, plus interest, are to be released to Defendant Otto Magee, and that Order is hereby rescinded.

IT IS FURTHER ORDERED that Plaintiff Herring Gas Company, Inc., shall continue to pay Defendant Otto Magee $500 per month, in full, pursuant to the agreement entered on February 28, 1990.

SO ORDERED.

---

**12.** Magee Dep. at 22, Pls.' Mot. Summ. J. Ex. E.

**13.** Herring Aff. at 2–3, Pls.' Mot. Summ. J. Ex. I.