GRIFFIS, J.,
for the Court:
¶ 1. Timber Lake Foods, Inc. (Timber Lake) filed suit seeking a preliminary injunction and damages against its former *523 employee, Stephanie Estess, based on her alleged violation of a covenant not to compete. The Lee County Circuit Court found that the geographic scope of the covenant not to compete was unreasonable. Timber Lake’s motion for a preliminary injunction was denied. On appeal, Timber Lake argues that Stephanie entered into a valid and enforceable covenant not to compete, and its restrictions should be enforced. We find that the covenant not to compete is reasonable; therefore, the judgment of the circuit court is reversed, and this case is remanded for further proceedings consistent with this opinion.
FACTS
¶ 2. On January 13, 2003, Stephanie was hired by Timber Lake, a Mississippi corporation operating in Tupelo, Mississippi. She was nineteen years old, and she had only minimal prior work experience as a waitress. Stephanie’s job at Timber Lake required her to broker meat and poultry products between buyers and sellers nationwide.
¶ 3. Stephanie signed an employment agreement when she began work at Timber Lake. The agreement included the following covenant not to compete:
Employee agrees that, except with written permission from Employer, he will not, during his employment by Employer and for a period of two (2) years after the end of his employment by Employer, perform any services regarding the brokerage of meat and/or poultry products (or the transportation thereof), directly or indirectly, either as owner, partner, joint venturer, shareholder, employee, or consultant, for any person or business entity (or a subsidiary thereof) within a two hundred fifty (250) mile radius of Tupelo, Mississippi.
Employee acknowledges that such period is a reasonable period of time and that the geographical area set forth in the foregoing paragraph is reasonable. Employee represents and admits that in the event of the termination of his employment, for any reason whatsoever, his experience and capabilities are such that the enforcement of a remedy by way of injunction will not prevent him from earning a livelihood.
¶ 4. On October 8, 2005, Stephanie married Brian Estess, the son of Timber Lake’s owner, Joe Estess. On March 30, 2008, Brian required a kidney transplant. Brian’s friend, Ashley Perkins, volunteered to donate a kidney to Brian. Perkins worked for Vector Transportation, a truck-brokerage business owned by Joe and operated out of the same building as Timber Lake.
¶ 5. Stephanie testified that she began an affair with Perkins at some point prior to the kidney transplant. Brian learned of the affair and confronted Stephanie about it in the days following his kidney transplant. Despite the strain on the family caused by the affair, Stephanie continued to report to work at Timber Lake. Joe testified that news of the affair caused tension at Timber Lake. As a result of that tension, Joe terminated Stephanie’s employment on April 4, 2008. Stephanie and Brian have since divorced.
¶ 6. On April 24, 2008, Stephanie was hired by Lawrence Wholesale (Lawrence), a direct competitor of Timber Lake. Stephanie performed the same job at Lawrence that she had performed at Timber Lake. Because of the nature of the job, Stephanie could work from any location where she had access to a telephone and computer. She testified that she had worked out of Lawrence’s main office in California and from her home located in Baldwyn, Mississippi, which is within 250 miles of Tupelo.
*524 ¶ 7. Timber Lake filed suit in the Lee County Chancery Court seeking a permanent injunction enforcing the covenant not to compete, compensatory damages for breach of contract, and attorney’s fees. The chancellor found that jurisdiction was proper in the circuit court, and the case was transferred to the Lee County Circuit Court.
¶ 8. The complaint specifically alleged that Stephanie was in violation of the covenant not to compete. Additionally, the complaint stated Stephanie was using confidential and proprietary information in violation of her employment agreement. The employment agreement, which was attached as Exhibit A to the complaint, contains the following clause entitled “Nondisclosure”:
Employee agrees not to disclose to any unauthorized person, firm, corporation or other entity, and Employee further agrees not to use for his own benefit or for the benefit of any unauthorized person, firm, corporation or other entity any of Employer’s trade secrets or any other information which is proprietary and confidential. Trade secrets or confidential proprietary information shall mean all such information and shall not be limited to information which has not been made available by Employer to the public. Trade secrets or confidential proprietary information shall include, but shall not be limited to the following: customer account information; credit histories; customer lists; supplier lists; supplier account information; price schedules; job descriptions; cost data; vendor lists; contracts; carrier lists; and all operational forms created by or for Employer.
Employee acknowledges that the unauthorized disclosure and/or use of Employer’s trade secrets or other confidential proprietary information, either during Employee’s tenure of employment or following his termination, would constitute a clear threat to the business of Employer. The provisions of this paragraph shall be enforceable by Employer and shall without limitation survive the termination of this Employment Agreement.
¶ 9. Following a hearing on Timber Lake’s request for an injunction, the circuit court entered an order on April 21, 2009, holding that the covenant not to compete was unenforceable. The court concluded:
Considering the telephonic nature of the business, enforcement of the covenant would be unreasonable and ineffective. If Ms. Estess were required to conduct business 250 miles from Tupelo, Mississippi, she could continue to contact the same buyers and suppliers she is currently doing business with at Lawrence Wholesale as well as those she contacted while working for Timber Lake Foods. Therefore, this Court finds that the geographic scope of the covenant is unreasonable. Furthermore, enforcement of the covenant would prove ineffective in preventing injury to the business interests Timber Lake Foods seeks to protect.
The order denied Timber Lake’s request for a permanent injunction. The circuit court’s order did not address Timber Lake’s allegation that Stephanie was using confidential and proprietary information to compete with Timber Lake. The order also failed to address Timber Lake’s claims for compensatory damages and attorney’s fees.
¶ 10. Timber Lake filed a notice of appeal on May 21, 2009. On May 27, 2009, the circuit court entered a judgment of dismissal as to the claims against Stephanie. The order stated: “This Court’s Order on the preliminary injunction and hold *525 ing that Timber Lake’s non-eompete agreement is unenforceable effectively ends all remaining claims included in the Complaint!,] and there is no need for further consideration of this case by the Court.” Timber Lake’s complaint was dismissed with prejudice. Timber Lake then filed an amended notice of appeal, on June 2, 2009, which stated that its appeal was from both the circuit court’s orders of April 21, 2009, and May 27, 2009.
STANDARD OF REVIEW
¶ 11. The Mississippi Supreme Court has provided the following standard of review for appeals concerning covenants not to compete:
When considering the enforceability of restrictive employment agreements, we review the entire record and “the evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court’s findings of fact, must be accepted.” Sta-Home Health Agency v. Umphers, 562 So.2d 1258, 1263 (Miss.1990)[ (]quoting Culbreath v. Johnson, 427 So.2d 705, 707 (Miss.1983)[) ]. We will not disturb the findings of the lower court when they are supported by substantial evidence unless the Chancellor has abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bowers Window and Door Co. v. Dearman, 549 So.2d 1309 (Miss.1989)[ ([citing Culbreath, 427 So.2d at 707-708[) ]; Bullard v. Morris, 547 So.2d 789, 791 (Miss.1989).
Empiregas, Inc. of Kosciusko v. Bain, 599 So.2d 971, 975 (Miss.1992).
ANALYSIS
¶ 12. “[Restrictive covenants are not favored in law; the employer has the burden of proving their reasonableness; and the reasonableness as to time and space limitations must be determined from the facts of each case.” Texas Rd. Boring Co. of La.-Miss. v. Parker, 194 So.2d 885, 889 (Miss.1967). “But they are valid unless unreasonable, and when reasonable, the courts will not hesitate to hold the parties to their contracts.” Frierson v. Sheppard Bldg. Supply Co., 247 Miss. 157, 172, 154 So.2d 151, 156 (1963). When considering the enforcement of a covenant not to compete, this Court must weigh the rights of the employer, the rights of the employee, and the rights of the public. Texas Rd. Boring Co., 194 So.2d at 888.
¶ 13. There has been no allegation of harm to the public in this case because there are many other buyers, sellers, and brokers of poultry who are in competition with Timber Lake and Stephanie. In Em-piregas, the supreme court stated “that non-competition agreements are only valid ‘within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent....’” Empiregas, 599 So.2d at 975 (quoting Wilson v. Gamble, 180 Miss. 499, 177 So. 363, 365 (1937)). Thus, we must look to whether the scope of the agreement was reasonably necessary to protect Timber Lake without imposing an undue hardship on Stephanie.
¶ 14. The covenant not to compete restricted Stephanie from brokering meat within 250 miles of Tupelo for a period of two years after her termination from Timber Lake. Joe testified that Timber Lake’s customers were located throughout the United States. As a broker, Stephanie could buy from and sell to these nationwide customers from any location with a computer and a telephone. Stephanie argued, and the circuit court agreed, that the 250-mile geographic scope was an arbi *526 trary restriction considering that the nature of Stephanie’s job allowed her to work from any location. The circuit court found that the 250-mile restriction was arbitrary because Stephanie could contact the same customers and conduct the same transactions in competition with Timber Lake outside that radius..
¶ 15. In essence, the circuit court’s finding is that, in order to protect its interests, Timber Lake would have had to impose a nationwide geographic restriction on competition by its former employees. We understand the reluctance of Timber Lake to draft a covenant not to compete containing a nationwide restriction. While other jurisdictions have acknowledged that advancements in technology have created a need for such a broad geographic scope in covenants not to compete,[1] Mississippi law has yet to address the issue.
¶ 16. In an effort to make the agreement reasonable to Stephanie, and thereby enforceable, Timber Lake chose to limit the geographic restriction to 250 miles instead of a nationwide restriction. On cross-examination, Joe was asked the reasoning behind the 250-mile limit when it had no connection to Timber Lake’s customers. He testified: “There is not a magic to the 250, but it keeps us from saying that [the employee] cannot earn a living.”
¶ 17. The circuit court was correct that the 250-mile limit was an arbitrary number that would not keep Stephanie from competing with Timber Lake outside that limit. However, such finding does not establish the unreasonableness of the geographic limit. The 250-mile limit provided some protection to Timber Lake by preventing her from competing in the Tupelo area. Joe testified that the covenant not to compete was designed to prevent employees who were provided extensive training at Timber Lake from moving across the street and competing against Timber Lake.[2] At the same time, the covenant did nothing to prevent Stephanie from competing with Timber Lake on a nationwide level anywhere outside the 250-mile radius, thereby balancing her in *527 terest in finding employment with a Timber Lake competitor.
¶ 18. Since we find that a nationwide geographic restriction would have reasonably protected Timber Lake’s interests, we cannot say that Timber Lake’s effort to balance Stephanie’s interest by reducing that restriction to within a 250-mile radius of Tupelo was unreasonable. The circuit court’s finding of unreasonableness based solely on the arbitrariness of the 250-mile limit was clearly erroneous. Accordingly, the judgment of the circuit court is reversed.
¶ 19. We recognize that the two-year time limitation of the covenant not to compete has expired during the pendency of this appeal. As such, the issuance of an injunction would be improper; therefore, we remand this case for a determination of Timber Lake’s claim for damages.
¶ 20. We further note that Timber Lake also stated a claim for compensatory damages for Stephanie’s alleged violation of the nondisclosure clause of the employment agreement. Joe testified that Stephanie had access to Timber Lake’s customer lists, supply lists, actual costs, selling price, and negotiation strategies. He further stated that Stephanie had gained inside knowledge of the business when she became a member of the Estess family. This claim is independent of Timber Lake’s request for a preliminary injunction, and it should be addressed by the circuit court on remand.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING, P.J., MYERS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. BARNES, J., NOT PARTICIPATING.

. See, e.g., Victaulic Co. v. Tieman, 499 F.3d 227, 237 (3rd Cir.2007) ("In this Information Age, a per se rule against broad geographic restrictions would seem hopelessly antiquated, and, indeed, Pennsylvania courts (and federal district courts applying Pennsylvania law) have found broad geographic restrictions reasonable so long as they are roughly consonant with the scope of the employee’s duties.’’); National Reprographics, Inc. v. Strom, 621 F.Supp.2d 204, 225 (D.N.J.2009) ("It should be noted that all parties have acknowledged that technology in the industry is becoming more advanced, and the Court notes that technological advances are a factor that could increasingly affect the reasonableness of geographic limitations.”)

. On appeal, Stephanie argues that Timber Lake has no legitimate business interest to protect because its potential customers are nonexclusive and the price of the chicken that Stephanie brokered is listed in a national market report. We disagree. "The primary right of the employer is that of 'protecting the business from loss of customers by the activities of the former employees who have peculiar knowledge of and relationships with the employer’s customers.' " Herring Gas Co., Inc. v. Magee, 813 F.Supp. 1239, 1245 (S.D.Miss.1993) (quoting Redd Pest Control Co. v. Heatherly, 248 Miss. 34, 43, 157 So.2d 133, 136 (1963)). The record shows that Timber Lake provided extensive training to Stephanie. She had no prior sales experience before her employment with Timber Lake. Timber Lake provided the training and opportunities for Stephanie to establish relationships with Timber Lake customers. Joe testified that a customer’s relationship with the broker will often cause a customer to pay a higher price to that broker as opposed to paying a lower price to an unfamiliar broker. The record shows that the overwhelming majority of Stephanie's sales during her employment at Lawrence were to former customers of Timber Lake with whom she had formed a relationship.