WILSON v. GAMBLE et al.

LUCAS v. GAMBLE et al.

(Division A. Dec. 6, 1937. Suggestion of Error Overruled Jan. 17, 1938.)

[177 So. 363. No. 32793.]

Wynn, Hafter & Lake, Emmet Harty, and **D. S. Strauss,** all of Greenville, for appellants.

Ernest Kellner, of Greenville, for appellees.

Argued orally by **Jerome S. Hafter** and **J. A. Lake, Jr.**, for appellants, and by **Ernest Kellner**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

The appellees are physicians and copartners who are now, and were for a number of years prior to 1928, engaged in the practice of their profession at Greenville, Miss., in connection with which they own and operate a well-equipped medical clinic. In 1926 they employed J. F. Lucas and R. E. Wilson, both of whom were young physicians just beginning the practice of their profession, under an oral contract to assist them in rendering professional service to their patients. The terms of this contract were not introduced in evidence, but it is evident therefrom that the terms must have been in accord with the written contract hereinafter set forth.

On January 1, 1929, separate written contracts were entered into by the appellees with Lucas and Wilson for their further employment by the appellees. These contracts were identical, and the one with Lucas reads as follows:

"This agreement, made and entered into this 1st day of January, 1929, by and between H. A. Gamble, P. G. Gamble and D. C. Montgomery, composing the partnership of Gamble Bros. & Montgomery, parties of the first part, and J. F. Lucas, party of the second part, witnesseth:

"Said parties of the first part hereby employ said party of the second part so long as his services to said parties of the first part in the conduct of their clinic in the City of Greenville, Washington County, Mississippi, are satisfactory, at a salary of $3,600.00 per annum, payable at the rate of $300.00 per month.

"As a further consideration of this contract, said parties of the first part agree to pay to said party of the second part at the end of each year of said employment, two-thirds (2/3) of his share of the net profits of said parties of the first part, computed on the following basis, to-wit: That per cent of said net profits which the total amount of work performed by said party of the second

part, less his annual salary, bears to the total amount of work performed by H. A. Gamble, P. G. Gamble, D. C. Montgomery, J. G. Archer, J. F. Lucas and R. E. Wilson, less their annual salaries; the total amount of work performed by each of said parties shall be reduced to the percentage that the total cash collections of said parties of the first part bears to the total amount of work performed by said parties of the first part.

"As a further consideration of this contract, said party of the second part shall have the right to terminate said employment upon three months notice in writing to said parties of the first part; and said party of the second part hereby agrees, if he shall terminate this contract, or if this contract shall be terminated by said parties of the first part, that, in either event, he shall not, within five years from the date of such termination of this contract, practice his profession in the City of Greenville, Washington County, Mississippi, or within five miles of the corporate limits of said City of Greenville.

"Said party of the second part hereby accepts said employment by the parties of the first part on the foregoing terms and conditions:

"A computation of the share of the net profits for the year 1928, to which said party of the second part is entitled, on the basis of this contract, is hereto attached.

"Witness our signature in duplicate, on the day and year first above written."

In January, 1937, a disagreement arose between appellees and Lucas and Wilson as to what the share of Lucas and Wilson in the net profits of this partnership for 1936 should be. This difference not having been adjusted to their satisfaction, Lucas and Wilson withdrew from the further service of the appellees and each entered independently thereof upon the practice of his profession in the city of Greenville.

The appellees then filed separate bills of complaint in the court below against Lucas and Wilson, alleging that

they, the appellees, had kept and performed the terms of the contracts; that Lucas and Wilson had withdrawn from their service under the contracts; and prayed for an injunction restraining each of them from the practice of medicine in the city of Greenville, or within five miles thereof for a period of five years. A preliminary injunction was granted on each of these bills of complaint. Thereafter Lucas and Wilson each answered the bill of complaint against him in practically identical terms, denying the allegations of the bill that the appellees had kept and performed the terms of the contract, alleging specific breaches thereof, and denying the appellees' right to the injunctions. Identical motions were then filed in each case for the dissolution of the injunctions, and both were heard at the same time on the same evidence, both of which were then overruled, and appeals were granted to the movants to this court. Both of the cases were submitted to this court and argued together.

The appellants' contentions are: (1) That their promise not to practice their profession in the city of Greenville or within five miles thereof for five years is unenforceable; and (2) that the appellees breached their contracts with the appellants, and therefore relieved the appellants from any obligation to them under the contracts.

The first of these contentions will be disposed of before the facts on which the second rests are set forth. The authorities dealing with the enforceability of the character of promise here under consideration are legion, and it would be impossible for anything new to be added to their discussion thereof. It is well settled that "a bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee

or agent," is valid "unless effecting, or forming part of a plan to effect, a monopoly." 2 Rest. Contracts, section 516. The authorities supporting this statement of the law will be found collated and discussed in 5 Williston on Contracts (Rev. Ed.), section 1643; annotations in 9 A. L. R. 1456; 20 A. L. R. 861; 29 A. L. R. 1331; 52 A. L. R. 1362; 67 A. L. R. 1002; 98 A. L. R. 963, and 29 Columbia Law Review, 347. Cf. Sivley v. Cramer, 105 Miss. 13, 61 So. 653, and Townsend v. Hurst, 37 Miss. 679. The limitation of time and space is undoubtedly here reasonable, and the evidence discloses that the public interest will not suffer thereby for the reason that the number of physicians in Greenville is amply sufficient for the rendition of necessary medical services to the citizens thereof and of its vicinity, and that no monopoly was either contemplated by the contracts or will result from their enforcement.

It is said by counsel for the appellants that the contracts lack mutuality, and are therefore unenforceable in this: that they are terminable at the will of the appellees. This objection to the enforceability of the contracts, if such there can be, disappears here for the reason that the appellants entered into the services of the appellees thereunder, and with the consent of the appellees continued therein for eight years; consequently, there is no inequity in holding the appellants to the performance of their promise not to engage in their profession within the territory and for the time specified. The authorities may be here in conflict, but the rule we have adopted is the more equitable and just. "The authorities are in conflict with respect to the enforceability of such a restrictive covenant on default by the employer." Williston, op. cit., section 1643. To hold that the covenant cannot be enforced when the employer is in default is more in accord with our own decisions in analogous cases, and we do not understand counsel for the appellees to otherwise contend.

While no agreement was entered into by the parties

hereto that the hearing on the motions to dissolve these injunctions should be on the merits of the appellees' complaint for the purpose of rendering a final decree thereon, the evidence introduced and heard practically covers the merits thereof. The parties seem to have proceeded without controversy under these contracts until January, 1936, when the appellants objected to the share of the profits of the partnership for 1935 tendered them by the appellees, claiming it should be something, the amount of which does not appear, more than that tendered. This demand was acceded to by the appellees, and the additional amount paid. The appellants rendered the service to the appellees contemplated by the contract for the year 1936. When, in January, 1937, it became necessary for the appellees to formulate a statement of the work done by them and to apportion to the appellants their share thereof, their regular bookkeeper and accountant suggested to them that since the appellants had objected to the apportionment made by him of the profits of 1935, it would be better for the appellees to employ another accountant to make this statement. Acting on this suggestion the appellees employed Ernest Kellner, a member of the bar and also an expert accountant, to make the statement. Kellner made this statement, and when it was delivered to the appellants they both objected thereto on the ground that their share of the profits had not been apportioned in accordance with the form therefor attached to and made a part of the contracts, that form being a computation made of the appellants' portion of the net profits for the year 1928.

Under the contracts the appellants were to receive two-thirds of a percentage of the net collections made by the appellees for the work performed by them and their employees. The method by which the percentage was to be determined was exemplified by the computation for the year 1928, attached to the contracts, as

follows: The charges for the work done that year by the appellees amounted to $227,224.83, of which $143,-021.53 was collected, so that the fraction, $\dfrac{143,021.53}{227,224.83}$ when reduced to a decimal, discloses that 62 per cent. of the amount of work charged had been collected. Salaries were allowed and paid not only to Lucas and Wilson but to each of the three partners and J. G. Archer, as provided in the contracts. The expenses incurred by the appellees, including these salaries, for the year 1928, amounted to $87,990.17, which, deducted from the $143,-021.53 collected, left a balance of $55,031.36, from which was then deducted a payment to Mrs. Mary Gamble of $3000, and one to R. C. Finley of $2601.56, leaving a balance to be distributed as profits of $49,429.80. The payment to Finley seems to have been an expense item, and that to Mrs. Mary Gamble a donation to a local hospital. The portion of the net profits to which Lucas and Wilson were then (1928) entitled was arrived at in this way: J. F. Lucas' total work done, $10,425.45, 62 per cent. thereof, $6,463.77, less salary, $3600, leaving a balance of $2,863.77; R. E. Wilson's total work done, $11,501.40, 62 per cent. thereof, $7,130.86, less salary, $3600, leaving a balance of $3,530.86. The percentage of the $49,-429.80 to be allocated to them was then determined as follows: J. F. Lucas, $\dfrac{2}{3}$ of $\dfrac{2,863.77}{107,915.44}$ X $49,429.80=

$874.48; R. E. Wilson, $\dfrac{2}{3}$ of $\dfrac{3,530.86}{107,915.44}$ X $49,429.80=

$1,076.19. The numerators of these fractions are the net profits from the work done by Lucas and Wilson, and the denominators thereof are the net profits received by the appellees on the total of collections for all the work done by them and their employees.

In making the statement for 1936 Kellner pursued the same method used for 1928, except this: The appellees maintain several departments in their clinic for the doing of laboratory, X-ray, and other like work in order to efficiently diagnose their patients' complaints and prescribe therefor. In 1928 the income from these departments was included in that allocated to each of these physicians, to each being allocated that portion thereof which was necessitated by and was an incident to the work performed by him. The 1936 statement made by Kellner included the income from these departments and also from the work of several physicians not mentioned in these contracts, but no part of it was allocated to either of these appellants or to the other physicians named in the contracts. The result of which was that no portion of the income therefrom appeared by the statement to be due the appellants, although it was included in the amount of work charged for and collected. When the statement was given them, the appellants objected to this feature of it, claiming that it was not in accord with the contracts as exemplified by the computation for 1928. The reason then given by the appellees for the statement being made in this form was that it would make very little, if any, difference, to the appellants for the reason that they had contributed little, if any, to the work of the appellees' laboratory and other departments or to the work performed by the physicians employed by the appellees and not mentioned in the contracts. The appellees, however, agreed to have another statement made in accordance with this claim of the appellants, but stated that it would take some time, probably a month, for the statement to be made.

One of the appellants then admitted that the statement so made would make very little difference to him. Both of the appellants, however, requested permission to examine the books of the partnership, or rather to have an expert accountant employed by them so to do. To this the appellees agreed, with the proviso that a

particularly named accountant should not be employed. The appellants did not avail themselves of this permission, and before the new statement was made, or begun, indicated that as they interpreted the contracts, the denominator of the fraction by which their portion of the profits should be ascertained should be the aggregate of the net collections which had been allocated to them by Kellner in the statement made by him, and should not include the income from the laboratory, etc., hereinbefore mentioned. If this were done their portions of the net profits would, of course, be more than they would be if this denominator included the income from all sources. In this contention they were in error, for if a new statement had been made allocating to each of the physicians his portion of the income which was derived from the appellees' laboratory, etc., then those items would not have appeared separately in the statement, and the aggregate of the work done and the collections therefrom by the appellees would have remained the same.

The appellees then instructed Kellner to confer with the appellants and ascertain exactly how they wanted the statement made. This he did, and they insisted on its being made as hereinbefore last set forth, which would increase the amount due by the appellees to each of them over that appearing on the statement made by Kellner. The appellees then, while not admitting that the appellants were entitled to this additional money, agreed to pay it in order to settle the controversy, and delegated Kellner to so advise them, and to deliver to them checks of the appellees therefor, but to deliver the checks only on the signing of receipts by the appellants in full of all claims they might have against the appellees under their contracts for the year 1936, and the years prior thereto. The appellants declined to execute such receipts or to accept the checks on that condition, the reason given therefor by them being that as the 1935 and 1936 statements were, in their judgment, erroneous it

might be that they had not received their proper portion of the profits for the years prior thereto. The amount due the appellants as their portion of the profits for the year 1936, as disclosed by the statement made by Kellner, was paid to them, but it was not accepted in full of all demands. Thereupon, claiming that the appellees had breached their contracts with them, both of the appellants withdrew from their service and were proceeding to enter upon the practice of medicine in the city of Greenville on their own account when they were met with these injunctions.

In order for the appellees to enforce the promise of the appellants not to practice their profession in the city of Greenville, or within five miles thereof, for a period of five years, in a court of equity by means of an injunction, it must appear that they have kept and performed their obligations under the contracts, in so far as they were requested by the appellants so to do at or before the time of their withdrawal from the appellees' employment. To express it differently: They are not entitled to these injunctions if the withdrawal of the appellants from their service was caused by a refusal of the appellees to render a requested performance to the appellants to which, under the contracts, they were entitled. Such did not occur here. The appellees acceded to every demand made on them by the appellants, and at no time indicated that they would not perform their obligations under the contracts. This being true, there has been no default on the part of the appellees which justified the appellants in the course they have taken.

Several items appear in the statement rendered the appellants for 1936 as expenses incurred by the appellees in the performance of work by them for that year, which the appellants now say should not have been included therein. This may or may not be true, and we are not called on to decide whether it is. The attention of the appellees was not called thereto by the appellants prior to their withdrawal from the service of the appellees,

and no opportunity was given the appellees to eliminate these items from the statement, if, in fact, they should be eliminated. The appellants say that in an action for an accounting between them and the appellees they would be entitled to have these expense items eliminated. This also may be true, as to which we express no opinion, but we are not here dealing with such an action, but with one involving only the right of the appellants to be relieved from their promise not to practice their profession in the city of Greenville because of what occurred between them and the appellees at and before the time they withdrew from the appellees' service.

One other question remains. When the motions to dissolve these injunctions came on to be heard, the appellants requested the court for an order directing the appellees to submit their books of account to them for inspection, and that the hearing be passed to a later date in order that this inspection might be made. This request was not granted. This ruling was correct for two reasons: (1) The appellants had been given an opportunity by the appellees to inspect their books of account and had not availed themselves thereof; and (2) on the issues presented by the motions to dissolve these injunctions, an inspection of the books could have aided the appellants only in establishing the fact that they were entitled to have additional services allocated to them as a part of the work done by them for the appellees. There was no necessity for establishing this fact, for the reason that the appellees offered, when the controversy arose over the 1936 settlement, to have the account restated and to allocate to the appellants these additional services if it then appeared that they were entitled thereto.

Affirmed and remanded.