FRIERSON *v.* SHEPPARD BUILDING SUPPLY COMPANY, INC.

No. 42695  June 10, 1963  154 So. 2d 151

*Young & Young,* Jackson, for appellant.

*Watkins, Pyle, Edwards & Ludlam,* Jackson, for appellee.

GILLESPIE, J.

Sheppard Building Supply Company, Inc., appellee here, was complainant in the court below, and the appellant here, Pete H. Frierson, was the defendant in the court below. Appellee sued appellant in the chancery court and obtained a permanent injunction enjoining appellant from engaging in business in competition with appellee for a period of two years from the date of the decree in the chancery court. From this decree appellant appealed.

In 1955, T. L. Sheppard and J. E. Sheppard decided to open a building supply business in the City of Jackson. Theretofore, the Sheppard brothers had been successful in the house building business. Conversations were had between the Sheppard brothers and appellant Frierson, as a result of which a corporation was or-

ganized and became Sheppard Building Supply Company, Inc., appellee here. Frierson was made general manager, J. E. Sheppard was president, and J. E. Sheppard and T. L. Sheppard owned all of the corporate stock. Appellant was employed as manager at a salary of $450 per month, plus bonuses based on sales and profits.

The first year appellant realized an income from salary and bonuses of over $9,000. By 1957, appellant's income was in excess of $20,000. Prior to July 1957, J. E. Sheppard had employed one French as assistant manager of the business. French and appellant did not get along well and in July 1957, for some cause, French and appellant engaged in a fight in the office of appellee. After J. E. Sheppard conducted an investigation for the purpose of determining who was at fault in the fight, French was discharged and appellant retained because Sheppard believed appellant was more capable of running the business than French. Appellant was retained as manager of the business provided he signed a non-competitive agreement. This agreement was dated July 3, 1957, and the first paragraph provided that both parties desired appellant to remain as manager until or unless "either party desires to terminate such employment." The next paragraph of the agreement follows:

"WHEREAS, in consideration of Employer employing Employee on this condition, the Employee is agreeable to not engaging in selling building supplies and materials either as an employee, owner, part owner or otherwise in competition with employer within a radius of fifty (50) miles from the present office of employer for a period of two (2) years after this employment is terminated at the option of either party; . . . . ."

A subsequent paragraph provided as follows: "In consideration of this employment, Employee agrees that if his employment with Employer is terminated for any reason that he shall not engage in business in any way

either as an employee, owner, part owner or otherwise in competition with Employer within a radius of fifty (50) miles within two (2) years from the date of such termination.''

In 1958, the company sales exceeded $2,000,000 and appellant and the Sheppard brothers were each paid salaries and bonuses of $43,521.77. On September 1, 1958, appellant purchased ten shares of common stock of the company for its book value under an agreement whereby the corporation would have the right to repurchase the stock at its book value in the event appellant's employment with the company was terminated. In 1959, the corporation made a net profit of exceeding $42,000 after payment of $52,794.39 each to the Sheppard brothers and appellant. In September 1959, another agreement was signed between appellee and appellant providing that his salary and duties would remain the same with certain additional provisions relative to appellant acquiring stock in the corporation and the right of the corporation to repurchase it. In this agreement it was also provided that other corporations controlled by the Sheppard brothers would have a right to purchase from appellee at cost. Nothing was said in this agreement with reference to restrictions on appellant competing with appellee should his employment terminate.

In 1960 the corporate sales exceeded $4,000,000 and the Sheppard brothers and appellant were each paid approximately $50,000 in bonuses and salaries.

During the tremendous growth of appellee from its inception in 1955 until the end of the fiscal year on August 31, 1961, appellant virtually had complete charge of the corporation, hiring and firing most of the employees, buying, handling credits jointly to some extent with J. E. Sheppard, and various other duties in connection with managing said corporation. During the last fiscal year, the sales of the corporation were approximately $5,000,000 and Sheppard brothers and appellant

each drew salaries and bonuses of $54,028.28. Also at the close of the fiscal year 1961, the corporation had accounts receivable of $821,934.50, an inventory of $562,078.24, and accounts payable of $880,276.69. In the latter part of 1961 J. E. Sheppard, president of appellee, requested appellant to reduce inventories and accounts receivable so that the corporation would be able to meet its obligations and put it in a sounder financial position. Several of the larger accounts were in difficulty.

On Saturday morning, January 13, 1962, at the direction of J. E. Sheppard, a meeting of the employees of the company was held at the company offices, at which time J. E. Sheppard introduced John Howard as the new credit manager of the company and told all employees that Howard would have full charge of credits from that time on. The evidence justified the chancellor in finding that J. E. Sheppard had reason to be concerned with the financial condition of the company at that time. Appellant resented statements made by J. E. Sheppard at this meeting in the presence of the employees and so told J. E. Sheppard. Thereafter, the new credit manager, Howard, J. E. Sheppard and appellant had dinner together and apparently the matter was straightened out. However, J. E. Sheppard went to the home of the chief bookkeeper of appellee and obtained more information about the accounts receivable and at 11:30 P. M. telephoned appellant that he had thought it over and appellant was fired. He used unbecoming language in so doing.

Within a few weeks after appellant was discharged by appellee he organized the Frierson Building Supply Co., Inc., painted the trucks used therein the same colors used by appellee, and hired a large number of the employees of Sheppard Building Supply Company, Inc., in the operation of Frierson Building Supply Company, owned and operated by appellant and his wife. The

record justifies the conclusion that a substantial number of customers of Sheppard became customers of Frierson after the organization of the latter firm, and a large amount of business was thus diverted to the new firm.

Both J. E. Sheppard and appellant Frierson are aggressive and strong personalities, and the evidence did not reflect on the integrity, or character of either.

■■ ■ Appellant says the contract not to engage in competition with appellee is void for lack of consideration. This contention raises the question whether the retention of an employee in the same position is sufficient consideration for a restrictive covenant against competition. Appellant had been manager for over two years when the trouble developed between him and French. The evidence fully justified a finding that after that occurrence appellant would have been discharged had he not signed the restrictive covenant. Appellant cites a number of authorities from other jurisdictions holding that when an employee is merely continued in his employment status after signing a non-competition agreement, without any promise of additional tenure, then there is no consideration for the restrictive agreement. If appellant had been discharged shortly after signing the restrictive agreement, this Court would probably hold the agreement was not supported by consideration. But appellant was not discharged until more than four years had elapsed during which time appellant had drawn as salary and bonuses about $200,000. Thus, the actual continuation of employment and the receipt by appellant of these large sums of money as compensation therefor, supplied any lack of consideration. Wilson, et al v. Gamble, et al., 180 Miss. 499, 177 So. 363, is controlling. In that case the parties were employed in 1926. The agreement not to compete was signed in 1929. Employees were not promised any specified tenure, but they worked about eight years under the contract. The employees argued that their agree-

ment not to compete should not be enforced because the contracts lacked mutuality. The Court said that this objection disappeared because the parties continued under the contract for eight years. Appellant, in the case at bar, says there is a difference between lack of consideration and lack of mutuality.

In the *Gamble* case the employees argued that the contracts were unenforceable because they lacked mutality in this: That they were terminable at the will of the employer. In the present case appellant argues, in substance, that the contract is unenforceable for lack of consideration in this: That appellee could terminate the contract at will. There is a difference between lack of mutuality of obligation and lack of consideration, depending upon how the term "mutuality" is used, Williston On Contracts, 3rd Ed., 105A, but the same text recognizes that "Sometimes the question involved where mutuality is discussed is whether one party to the transaction can by fair implication be regarded as making any promise; but this is simply an inquiry whether there is consideration for the other party's promise." Ibid. Thus, in the *Gamble* case the inquiry was the same as in the present case, and it is no distinction that in one the right of the employer to terminate the employment at will is called lack of mutuality, and in the other the same thing is called lack of consideration.

■■ ■ Appellant contends that the agreement not to compete, which was signed by the parties in 1957, was cancelled by the agreement executed by the parties in September 1959. The chancellor found to the contrary and we are unable to find any error in this finding. The 1959 agreement contains no indication that the parties intended to cancel the non-competitive agreement of 1957. The latter agreement concerned the purchase by appellant of capital stock in appellee, and the right of certain other corporations to purchase from appellee at cost.

■■■ Appellant argues that the evidence did not justify the chancellor's finding that appellant was discharged for just cause, and that appellee waived the right to enforce the covenant because of the arbitrary manner in which appellant was discharged. The contract did not require appellee to have just cause for discharging appellant. We are of the opinion that the evidence justified the chancellor's finding of just cause in the discharge of appellant. Had the chancellor found that appellant's discharge was arbitrary, capricious, or in bad faith, he could have refused to lend the aid of equity in enforcing the contract. We are unable to say the chancellor was manifestly wrong in finding that J. E. Sheppard, president of appellee, was justified in being concerned about the accounts receivable and the inventory as well as the misunderstanding or bad feeling which arose in connection with the hiring of a credit manager. All these matters were for the chancellor, both in finding the facts and in exercising his discretion whether equity should lend its aid in enforcing the contract. We are unable to say appellee did not come into court with clean hands. Cf. Portion Pack, Inc. v. Bond, (Wash.) 265 P. 2d 1045.

■■■ Appellant next contends that the nature of his employment was not of such nature as to be susceptible of being protected by a covenant not to compete. All the authorities hold that covenants of this kind must be reasonable as to time, territory, and the nature of the employment or trade protected. He argues that appellant did not possess any trade secrets or occupy any confidential relationship with appellee's customers. The chancellor found against appellant on this specific matter. He was fully justified in so doing. The record shows without question that appellant took from appellee, within a short time after opening Frierson Building Supply Company, numerous employees and considerable business. There is no merit in this contention.

■■ ■ Appellant also contends that the covenant is unenforceable because it is indefinite as to what it protected. It is argued that the contract does not specify what appellant is prohibited from doing. The contract provides that appellant is not to engage "in selling building supplies and materials either as an employee, owner, part owner, or otherwise" in competition with appellee within two years after termination of employment with appellee and within fifty miles of Jackson, Mississippi. We are of the opinion that the contract is sufficiently definite as to the activities prohibited.

■■ ■ Appellant assigns as error the action of the trial court in admitting the evidence of A. N. Morgan, a certified public accountant. This witness testified as an expert. He examined the books of appellee after appellant was discharged and testified at length concerning the condition of the corporation's affairs, particularly with reference to the accounts receivable, inventory and accounts payable. Appellant argues that since the heart of the suit was whether appellant's discharge was fair, equitable and reasonable, the Court should not have admitted this evidence as to facts not known to J. E. Sheppard when appellant was discharged. We are of the opinion that no reversible error was committed in this regard. The testimony in the main corroborated the contentions of appellee and rebutted the contentions of appellant. Moreover, if it should be conceded that some parts of Morgan's testimony were not relevant, we could not say it was so harmful as to require reversal.

■■ ■ Appellant complains of the action of the chancellor in sustaining objections to the testimony of Ray Edwards, one of the attorneys for appellee. Appellant offered this witness and the court sustained appellee's objection on the ground of privilege. Appellant contends that Edwards could have testified concerning his knowledge of the intention of the parties surrounding

the execution of the two agreements in question, and that he had knowledge the appellant had done a good job as manager of appellee. It is contended that this testimony would have been valuable to appellant and that it was error to exclude it. Also, in this connection, the record shows that appellant had a conversation with Edwards after appellant's discharge and that one Breed was present at that time. The court would not admit the testimony of either of the parties present at that meeting on the ground of privilege. We do not decide whether this testimony was or was not admissible. We hold that there is no showing in this record that the exclusion of this testimony was harmful to the extent of requiring reversal. Before we can reverse a case we must find both error and harm therefrom. ■■ ■ There is nothing in this record to show that the testimony excluded by the chancellor would probably have changed the result—in short, we cannot say the exclusion of the evidence was harmful. Therefore, we cannot reverse even if the testimony was admissible. Rule 11, Revised Rules, Supreme Court of Mississippi.

Finally, appellant contends that the chancellor erred in enjoining appellant from competing with appellee for a period of two years from August 27, 1962, the date of the final decree. Appellant contends that the two-year period should begin on January 13, 1962, the date he was discharged. Appellant opened the Frierson Building Supply Company in competition with appellee a few weeks after his discharge and actively competed with appellee from about February 1, 1962 until the final decree on August 27, 1962. This suit was filed on February 22, 1962. No temporary injunction was sought. The chancellor gave appellee two years' protection from competition beginning with the date of the final decree. The contract provided for two years protection from the date of termination of the employment. Appellee argues that if the court could not give additional pro-

tection beyond the time specified in the contract when the delay in securing an injunction is not the fault of the employer, a non-competitive contract for a short duration would be valueless and equity would be prevented from granting the only relief available. Appellant argues that the court cannot grant relief beyond the terms of the contract.

No binding authority is cited on this question. We have carefully weighed the competing considerations involved in this question and conclude that the answer can be found only in the contract. ▮▮ These restrictive contracts are in restraint of trade and individual freedom and are not favorites of the law. ▮ ▮ But they are valid unless unreasonable, and when reasonable, the courts will not hesitate to hold the parties to their contract. But it is the contract the parties themselves made that measures the restriction, both as to scope and time. The power of the court is invoked by the contract and the necessity that contracts be honored, but nothing in this case indicates that equity requires appellant be enjoined past the date provided in the contract. Appellee could have requested a temporary injunction, or it could have sought damages for the breach of contract. Or it could have provided for two years' freedom from competition regardless of the date of termination of appellant's employment. Having made the contract limiting the period to two years from the date of termination of employment, the court may not extend the time beyond that date. ▮ ▮ We hold that the decree and injunction should have enjoined appellant from competition with appellee for a period of two years beginning January 13, 1962. The decree is modified to that extent and the decree below is thus reversed in part, otherwise the decree is affirmed. Costs of appeal are assessed one-half to each party.

Affirmed in part, reversed in part, and remanded.

*McGehee, C. J., and McElroy, Rodgers and Jones, JJ.,* concur.