744 So.2d 365 (1999)
Anthony Roshay RIGGS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00511-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*367 George F. West, Jr., Natchez, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND LEE, JJ.
LEE, J., for the Court:
¶ 1. This is a criminal appeal seeking relief in the form of setting aside the verdict and the granting of a new trial. Anthony Riggs, the appellant, was found guilty of aggravated assault by shooting and wounding Joel Davis with the felonious intent to harm him and to cause serious bodily injury to him in violation of section 97-3-7 of the Mississippi Code, as amended. We affirm the findings of the Adams County Circuit Court.

STATEMENT OF THE FACTS
¶ 2. On June 3rd, 1995, Joel Davis was at Floyd's Spare Time Lounge in the 200 block of Martin Luther King Boulevard in the downtown area of Natchez, Mississippi. At some time during the course of the evening, Anthony Riggs had an altercation with Keith Minor. Riggs was with Leonard Marsaw and had intentionally spilled a drink onto Minor's shirt. Joel Davis, Vincent Ross and Leonard Marsaw tried to intercede and make peace between the parties by physically restraining Minor. Soon thereafter, Riggs was seen leaving the Lounge.
¶ 3. At approximately 1:30 a.m., Officer Kyle Wilson of the Natchez Police Department was patrolling the 200 block of Martin Luther King Boulevard in his patrol car and was flagged down in front of the Lounge by Maurice Davis. In front of the club, Officer Wilson found that a black male, identified as Joel Davis, had apparently been shot once in the buttocks, and once each in his rear left and right thighs. The officer called for an ambulance and called for another unit as backup, with Officer David Harris responding immediately to the scene.
¶ 4. Many of the patrons were streaming out of the Lounge at this time and several were questioned by the officers as to what had taken place. At that time, both officers were given a similar description of the assailant by several different witnesses, including the victim, as that of a black male known as "Marsaw" who was wearing a red Chicago Bull's jersey, brown pants and white tennis shoes.
¶ 5. Jody Waldrop of the Criminal Investigation Unit also arrived at the scene and subsequently conducted an interview with the victim, Joel Davis, at the hospital. *368 Waldrop testified that Davis told him that he was in an altercation at the night club with people called Marsaws and that one of them shot him. Officer Wilson testified that Davis and others told him that the person who shot Davis was wearing a red Chicago Bulls jersey. Davis testified at trial that he saw Irving Marsaw standing with Riggs at the door of the night club just before the shooting and that Riggs was holding a gun in his right hand by his side. Davis saw Riggs fire the gun and he turned, but he could not move because he had been shot in the buttocks and the back of both thighs in rapid succession.
¶ 6. Officer Waldrop also interviewed Maurice Davis at the hospital and Troy Wiley and Keith Minor at the police station. In all interviews the name of Marsaw recurred. All men gave similar descriptions of the perpetrator as a black male wearing a red Chicago Bull's jersey. Waldrop interviewed the victim again at the hospital at nine the next morning. Joel Davis, the victim, told the officer at that time that the name of the man who shot him was Anthony Riggs. A warrant for Riggs's arrest was then issued. A photo composite of nine suspects was delivered to Davis who then picked Anthony Riggs, the appellant, out of the photo lineup.
¶ 7. At trial, defense witnesses testified that the appellant left the lounge around 11:30 p.m. Defense witnesses Leonard Marsaw and Lillie Mae White both confirmed that Anthony Riggs was definitely seen at the lounge between 11:00 and 11:30 p.m. They saw him leave, but they could not be sure whether he returned.
¶ 8. The defense also questioned the identity of the assailant because the victim misidentified him as "Marsaw" at the time of the shooting. Davis explained that when he was shot, he mistakenly thought that Riggs's name was Marsaw because Riggs was with Leonard Marsaw and others had referred to him as "Marsaw." Only in the hospital did he learn from Maurice Davis that the real name of the assailant was not Marsaw but Riggs, which he told to Officer Waldrop the next morning.
¶ 9. After hearing all of the testimony, the jury weighed the evidence and found that Anthony Riggs was guilty beyond a reasonable doubt of the crime of aggravated assault. Riggs was sentenced to twenty years in prison.

ISSUES
¶ 10. The appellant asserts three issues on appeal:
I. THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
II. THAT THE DEFENDANT DID NOT RECEIVE A SPEEDY TRIAL III. THAT THERE WERE THE JURORS WHO WERE NOT FAIR AND OPEN-MINDED DURING VOIR DIRE OR WHO SHOWED PREJUDICE WHICH LEFT THEM PARTIAL AT TRIAL

DISCUSSION OF THE LAW

I. THAT THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 11. Riggs contends that the jury's verdict was against the overwhelming weight of the evidence because of inconsistencies between the State's evidence and the defense's version of what happened. These inconsistencies included an "alibi" as well as a denial by the appellant of any knowledge of the shooting. Riggs contends that because the testimony of the defense was credible, that reasonable doubt exists and the court should have granted a directed verdict after the State rested its case.
¶ 12. Based on the weight and sufficiency of the evidence presented at trial, we find that a reasonable juror could have found that the appellant was guilty of aggravated assault. The resolution of the facts is the jury's function; it is the ultimate *369 trier of fact. A jury may weigh the testimony of each witness in determining the credibility of that witness. This edict was elaborated upon in the early decision of Buckingham v. Walker, 48 Miss. 609, 630 (1873):
The jury is independent of the judge in responding to an issue of fact. The theory of our system assumes their entire capacity to make a true finding of facts, and therefore it belongs to their province to judge of the credibility and weight of the evidence. The court cannot revise and correct error in the verdict. It may, however, set aside when against the clear weight and preponderance of the testimony.
¶ 13. The standard against which a motion for JNOV is adjudged was laid out by the Mississippi Supreme Court in May v. State, 460 So.2d 778, 781 (Miss. 1984), as follows:
Where the defendant had moved for a JNOV, the trial court must consider all of the evidencenot just the evidence which supports the State's casein the light most favorable to the State. The State must be given the benefit of all the favorable inferences that may be reasonably drawn from the evidence. Glass v. State, 278 So.2d 384, 386 (Miss.1973). If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motionthat is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusionsthe motion should be denied.
In other words, once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983).
¶ 14. A review of the weight of the evidence as against the jury's verdict has been addressed by the U.S. Supreme Court in Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Tibbs held that in reviewing a motion for a new trial based on grounds that the verdict is contrary to the overwhelming weight of the evidence, the reviewing court must determine that a serious miscarriage of justice has occurred, so that the verdict may be set aside and a new trial is granted for reconsideration of the evidence by a new jury. Groseclose v. State, 440 So.2d 297, 300 (Miss.1983) held that a new trial would not be ordered unless the court is convinced that the verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice."
¶ 15. Such a weighing of the evidence may be presumed here. Miller v. State, 35 So. 690 (Miss.1904) addressed the jury's role in weighing of the witnesses' testimony as the
sole and exclusive judges of the weight of the evidence and the credibility of the witnesses, and, in determining the weight to be given to the testimony of each witness, you may take into consideration the reasonableness or the unreasonableness of the testimony; and, if you believe from the evidence that any witness has willfully sworn falsely to any material matter in this case, then the jury may disregard the whole testimony of such witness or witnesses, if you believe it untrue.
¶ 16. In the case at hand the verdict of guilty of aggravated assault is supported by the testimony of the State's witnesses. Although Riggs claimed that he had an *370 "alibi" at the time of the shooting because he spent the night in the same room with David White, the son of Lillie Mae White, Mrs. White's testimony contradicted that of her son. She testified that Riggs spent the night with them "all the time," whereas David White testified that the night of the shooting was the first time Riggs had ever stayed at their house. David also testified that Riggs had told him that he "had gotten into a little old incident" on the night in question.
¶ 17. The jury apparently attached no credibility to David White's testimony. Though he claimed to remember in detail what Riggs was wearing on the night of the shooting, he could not remember when Riggs asked him to testify on his behalf. Further doubt was raised when David testified that he was not aware that Riggs was accused of the shooting at Floyd's Lounge until the day of the present trial when the prosecution told him about it during cross-examination. In contrast, several prosecution witnesses testified that Riggs was physically present at the scene at the time of the shooting.
¶ 18. Also, the testimony of David's mother, Lillie Mae White, who was present at a club across the street from Floyd's on the night of the shooting, indicated that the shooting occurred at approximately 12:00 p.m. when she saw someone bring the "dude out." However, the testimony of both police officers and the victim corroborated that the shooting actually took place around 1:30 a.m. This discrepancy, along with the conflicting testimony of Mrs. White and her son, obviously left doubt in the jurors' minds as to their credibility.
¶ 19. The court in Branch v. State, 347 So.2d 957, 958 (Miss.1977) stated that "there is a presumption that the judgment of the trial court is correct, and the burden is on the appellant to demonstrate some reversible error to this Court." "In the absence of anything in the record appearing to the contrary, this Court presumes that the trial court acted properly." Moawad v. State, 531 So.2d 632, 635 (Miss. 1988). Riggs has failed to make a persuasive argument that the verdict should be overturned. He has not shown an abuse of discretion by the court and has made no reasonable argument proving that an unconscionable injustice would prevail without a reversal of the verdict. Therefore, this assignment of error is without merit and is denied. Benson v. State, 551 So.2d 188 (Miss.1989).

II. THAT THE DEFENDANT DID NOT RECEIVE A SPEEDY TRIAL
¶ 20. Riggs contends that he was denied the right to a speedy trial under the Sixth Amendment to the United States Constitution and MISS. CONST. art. III, § 3 because of a delay of approximately 400 days from the date of his arrest or indictment to the date of his trial. He claims that this delay affected the reliability and integrity of the fact-finding process which prejudiced the memory of a prosecution witness of the events that occurred on the night of the shooting. Riggs claims that he did not cause the delay and that it was unnecessary.
¶ 21. A constitutional right to a speedy trial attaches at the time of the accused's arrest, indictment or information. Smith v. State, 550 So.2d 406, 408 (Miss.1989). The length of time between Riggs's indictment on July 17, 1995, and his trial was just over twelve months. This is more than the eight months said to be "presumptively prejudicial" by the court in Smith v. State and calls for the application of the Barker factors. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); Taylor v. State, 672 So.2d 1246, 1258 (Miss.1996). These factors must be considered in order to determine whether a right to a speedy trial has been violated. The analysis in determining whether the right to a speedy trial was violated must turn on the facts of each particular case, with no one factor being dispositive. Taylor, 672 So.2d at 1258. Factors include: (1) the length of the delay, *371 (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant resulting from the delay. Id. "Any delay as a result of action by the State, without good cause, causes the time to be counted against the State." Id. at 1259.
¶ 22. Though the trial judge ruled that there was a 270 day speedy trial violation, to the extent that the delay is a triggering mechanism, further inquiry is warranted, although considerably longer delays than this 400 day delay have been found not to require dismissal. The delay in Smith v. State, 489 So.2d 1389 (Miss.1986) was seven years; in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), over five years; and in Hughey v. State, 512 So.2d 4 (Miss.1987), thirty-three months. Relying too heavily on a presumption of prejudice from a delay consisting of an arbitrarily set period of time is not in keeping with Barker's admonition that the inquiry is dependent upon the peculiar circumstances of the case. Barker, 407 U.S. at 530-31, 92 S.Ct. 2182.
¶ 23. A delay caused by the actions of the defendant, such as a continuance, tolls the running of the time period for that length of time, and is subtracted from the total amount of the delay. Wiley v. State, 582 So.2d 1008, 1011 (Miss.1991). In this case, Riggs was indicted on July 17, 1995. The record is silent from August 31, 1995, when Riggs was found to be indigent and the court appointed counsel on his behalf, until June 24, 1996, when an order was filed setting trial for the July 1996 term. A motion to dismiss was then filed on July 2, 1996. Private counsel entered an appearance to represent Riggs and on July 3, 1996, and filed a motion for a continuance. Riggs went to trial on July 22, 1996. Although the State does have the duty to ensure the defendant's right to a speedy trial, the failure of the defendant to assert the right will make it difficult to prove that it was denied. Barker, 407 U.S. at 531, 92 S.Ct. 2182. Riggs sought a dismissal twenty days prior to going to trial. Barker mandates that considerable weight be given to the fact that a defendant did not request a speedier trial than he eventually received. Absent a showing of "bad faith" on the State's part, the delay "weighs less heavily" against the State. Id.
¶ 24. As to the fourth factor in Barker, prejudice to the defendant, Barker holds it to be assessed in light of the interests to the defendant which the right to speedy trial was designed to protect. Riggs claims that this delay contributed to the memory loss of Joel Davis, the victim of the shooting. Specifically, he claims that Davis could not remember the exact time he saw Riggs in the doorway of the lounge on the night of the shooting. The record shows that Davis testified that he saw Riggs in the doorway at approximately 1:00 a.m. The testimony of other witnesses corroborated this; therefore, there was no demonstration of actual memory loss which might have caused prejudice. This State recognizes that the defendant is not compelled to make an affirmative showing of prejudice in order to prove a denial of the constitutional right to a speedy trial. Flores v. State, 574 So.2d 1314, 1323 (Miss.1990). While the presumptive prejudice of "inordinate delay" is recognized, see Barker, 407 U.S. at 537, 92 S.Ct. 2182, the Mississippi Supreme Court has refused to reverse and discharge a defendant who suffered no actual impairment in the conduct of his defense from a delayed trial. Spencer v. State, 592 So.2d 1382, 1390 (Miss.1991); Stogner v. State, 627 So.2d 815, 819 (Miss.1993).
¶ 25. Balancing the four factors, we find that though there was a delay, that no prejudice resulted therefrom. Consequently we find no merit to this issue.

III. THAT THERE WERE JURORS WHO WERE NOT FAIR AND OPEN-MINDED DURING VOIR DIRE OR WHO SHOWED PREJUDICE *372 WHICH LEFT THEM PARTIAL AT TRIAL
¶ 26. The appellant contends that the jury's verdict should be reversed because one of the jurors could not be fair and open-minded. He alleges that juror Gordon Brown is married to one of the court stenographers and that this relationship would preclude him from serving impartially. The record shows that the appellant raised no objection during the voir dire process to the seating of Brown as a juror or to his selection as foreman of the jury. Actually, the record does not indicate that the trial judge selected the jury foreman, as the appellant claims. The issue must therefore be treated as waived for purposes of appeal. Failure to raise the issue in the trial court bars it from being raised for the first time on appeal. Billiot v. State, 454 So.2d 445, 465 (Miss. 1984). Since no such objection appears in the record, this court will presume that the trial court acted properly. Moawad v. State, 531 So.2d 632, 635 (Miss.1988).
¶ 27. Riggs also asserts that the voir dire selection process should be viewed as plain error. The "plain error doctrine" requires that there be an error and that the error must have resulted in a manifest miscarriage of justice. Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). Both error and harm must be found for reversal. Frierson v. Sheppard Bldg. Supply Co., 247 Miss. 157, 171, 154 So.2d 151, 156 (1963). Neither element has been shown. Only the implication that Brown could not serve as a fair and impartial juror has been raised without any illustration of harm affecting the appellant's fair trial rights. We find this argument to be without merit.
¶ 28. Riggs also alleges that another juror was reluctant to acknowledge her verdict. The record is absolutely void of any support for this claim. There is no objection on the record to alert the trial judge to such a problem. In fact, the record shows that the trial judge polled the jurors and made an on-the-record finding that the verdict was unanimous. For lack of any objection or allegation of error, the matter is procedurally barred. Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984). A trial court will not be put in error on an issue not placed before it. Livingston v. State, 525 So.2d 1300, 1303 (Miss.1988).

CONCLUSION
¶ 29. Finding that the verdict was not against the weight of the evidence, that the appellant did not suffer prejudice for lack of a speedy trial, and that there was no evidence to show that jurors were not fair and impartial, we affirm the findings of the Adams County Circuit Court.
¶ 30. THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.
COLEMAN, J., NOT PARTICIPATING.