992 So.2d 642 (2008)
John RAINES, Appellant
v.
The BOTTRELL INSURANCE AGENCY, INC., Appellee.
No. 2006-CA-02019-COA.
Court of Appeals of Mississippi.
April 29, 2008.
Rehearing Denied August 5, 2008.
Certiorari Dismissed October 16, 2008.
*644 John Hinton Downey, Madison, attorney for appellant.
William F. Ray, Brian Carter Smith, Jackson, attorneys for appellee.
Before LEE, P.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. John Raines, an insurance salesman, left the employment of the Bottrell Insurance Agency, Inc. (Bottrell) in June 2005 to work for Marchetti, Marchetti, and Robinson, Inc, a competitor of Bottrell. Subsequently, Raines began selling policies to and managing accounts for a few of his former clients from Bottrell. Bottrell sued Raines for violation of his employment agreement, specifically the restrictive covenant preventing him from, among other things, accepting any business from Bottrell's clients for a period of two years.
¶ 2. The trial court found in favor of Bottrell, awarding it actual and punitive damages plus attorneys' fees. Aggrieved, Raines appeals. His assignments of error on appeal can be broken down into the following four categories: (1) that the contract between Bottrell and Raines is unenforceable; (2) that his breach of the contract is excusable; (3) that the trial court erroneously awarded actual and punitive damages; and (4) that the trial court's rejection of his counterclaim against Bottrell was in error. Finding no error, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY
¶ 3. In 1993, Raines began working for Bottrell. He had no prior experience in the insurance business, and Bottrell invested significant time and money in training him as an insurance salesman. In 1999, Bottrell was acquired by Trustmark Insurance *645 Agency. As a condition of continued employment at Bottrell, Trustmark required Raines to sign an agreement that, among other things, prevented him from accepting business from any Bottrell customer for a period of two years if Raines ever left the company for any reason.
¶ 4. In June 2004, Raines began discussions with Marchetti concerning possible employment. These discussions concluded with an oral agreement between Raines and Marchetti that allowed Raines to receive 100% of all commissions from any Bottrell customers he brought to Marchetti so long as Raines indemnified Marchetti against any legal action brought to enforce the non-compete clause of Raines's agreement with Bottrell.
¶ 5. On June 6, 2005, Raines resigned from Bottrell and subsequently began working for Marchetti on June 13, 2005. Shortly thereafter, Raines called and was called by a number of his former clients from Bottrell. Within two weeks, almost all of them had sent out Agent of Record letters to their insurers, switching agents from Bottrell to Marchetti.
¶ 6. In July 2005, Bottrell filed suit against Raines alleging breach of contract, misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with business relationships. After a two-day trial that September, the trial court concluded that Raines had intentionally breached his agreement with Bottrell and awarded actual and punitive damages plus attorneys' fees to Bottrell. It is from this ruling that Raines appeals.

DISCUSSION

I. The contract between Raines and Bottrell is enforceable.

(A) The contract is not void as a matter of public policy.
¶ 7. Raines argues that his contract with Bottrell is unenforceable as a matter of public policy because it denies third parties the right to choose a provider of complex services, in this case, insurance sales.
¶ 8. Although "[c]ontracts which contain non-compete agreements have been viewed by this Court as contracts that restrict trade and individual freedom and are not favored by the law" we have nevertheless held that "if such agreements are reasonable they are valid and upheld by this Court." Redd Pest Control Co. v. Foster, 761 So.2d 967, 972(¶ 19) (Miss.Ct. App.2000) (citing Frierson v. Sheppard Bldg. Supply Co., 247 Miss. 157, 172, 154 So.2d 151, 156 (1963)). Generally, "[t]here are three aspects that are examined to determine the enforceability of a non-compete agreement: (1) the rights of the employer, (2) the rights of the employee, and (3) the rights of the public." Id. at 972-73(¶ 20) (citing Texas Road Boring Co. v. Parker, 194 So.2d 885, 889 (Miss.1967)). It is the third consideration mentioned above, the rights of the public, that Raines challenges in this case.
¶ 9. Raines argues that the public interest is negatively affected by enforcing the restrictive covenant found in his employment agreement because it denies third parties the ability to choose their preferred insurance agent if that agent leaves a firm to work for another. However, the law in this state has long been that "the public will not be viewed to have been harmed by a covenant not to compete when ample services are available and a monopoly is not created." Id. at 973(¶ 21) (citing Wilson v. Gamble, 180 Miss. 499, 510-11, 177 So. 363, 365 (1937)).
¶ 10. Raines has failed to demonstrate that restrictive covenants found in insurance sales employment agreements create *646 a deficiency of service in the insurance industry, or that any one insurance company in the state has created or is in danger of creating a monopoly through its use of them. Furthermore, Bottrell had an expert testify at trial about the necessity of non-compete clauses like the one found in Raines's employment agreement within the insurance industry. Accordingly, we find that the restrictive covenant in Raines's agreement with Bottrell was reasonable and the interests of the public are not impaired to the degree necessary to avoid enforcement of the agreement. Therefore, we find Raines's argument on this issue to be without merit.

(B) Sufficient consideration and mutuality exist to enforce the employment agreement.
¶ 11. Raines argues that the employment agreement is unenforceable for lack of consideration or mutuality. He asserts that the agreement he signed containing the restrictive covenant when Trustmark bought Bottrell was not supported by any further consideration other than his continued employment with the company in the same capacity as before, so the agreement is therefore void due to a lack of consideration.
¶ 12. The supreme court, however, has held that continued employment alone can be sufficient consideration to uphold a contract. Frierson, 247 Miss. at 167, 154 So.2d at 154. In Frierson, the court upheld a restrictive covenant between an employer and an employee even when the agreement did not provide for continued employment as consideration for the restrictive covenant because the employee had continued to work and receive a salary for a number of years after the covenant was signed. In doing so, the court impliedly held that a restrictive covenant entered into as a prerequisite for continued employment constitutes sufficient consideration to support an agreement.
¶ 13. In the instant case, the contract Raines signed when Trustmark bought Bottrell specifically mentions Raines's continued employment as consideration supporting the agreement, thereby constituting valid consideration to enforce the agreement. His argument about mutuality is merely a restatement of his argument on consideration. Any agreement possesses sufficient mutuality so long as both parties to the agreement give valid consideration. We find that Bottrell gave valid consideration in offering continued employment. Therefore, we find Raines's assignment of error on this issue to be without merit.

II. Raines's breach of his employment contract is not excusable.
¶ 14. Raines asserts that Bottrell, through several different actions, breached its employment contract with him and so he is relieved of any further obligations under the contract. Specifically, Raines refers to a change in the way the salesmen were compensated from a "pay when booked" to a "pay when paid" formula, an accounting error that necessitated the recovery of some money that Bottrell had accidentally overpaid Raines, and internal discussions at Bottrell about changing the way commissions were distributed to the salesmen.
¶ 15. The issue of breach is primarily based on factual findings, in this case the chancellor's findings of fact. "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." Sanderson v. Sanderson, 824 So.2d 623, 625(¶ 8) (Miss.2002). Furthermore, "[t]his Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his [or her] discretion, was manifestly *647 wrong, clearly erroneous, or an erroneous legal standard was applied." Id. at 625-26 (citation omitted).
¶ 16. In this case, the chancellor found that Bottrell had not breached its agreement with Raines. Those findings were based on testimony adduced at trial about the effect of switching from the "pay when booked" to the "pay when paid" compensation method, the recovery of the sums Bottrell overpaid to Raines, and the internal discussions concerning the distribution of commissions. No evidence in the record indicates that the chancellor's findings were manifestly wrong or not supported by substantial evidence. Therefore, we find Raines's argument on this issue to be without merit.

III. The trial judge did not err in his award of damages and attorneys' fees.

(A) Actual Damages
¶ 17. Raines argues that the chancellor incorrectly awarded actual damages based on gross income and a speculative retention rate after two years. He asserts that Bottrell should have been required to prove, and the chancellor required to calculate damages based on, a net profit analysis. He also argues that the future client retention rate the chancellor used to calculate damages was speculative at best.
¶ 18. Raines, however, never objected to the gross income analysis at trial. He only objected to the speculative retention rate calculation. "In order to assign error on appeal, the issue must be raised at the trial level or it is waived." Prestridge v. City of Petal, 841 So.2d 1048, 1054(¶ 27) (Miss.2003). Because Raines never objected to this element of the damages calculation at trial, this issue is waived for this appeal.
¶ 19. Raines also argues that the estimated retention rates used by the chancellor in his calculation of the actual damage award was grossly speculative. However, the record makes clear that the chancellor's retention rate calculation was based in part on data Raines provided and in part on data provided by Bottrell. The chancellor calculated the retention rate portion of damages using both sets of data, and his final calculation fell between the two parties' projected calculations. "Where it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery ... [t]he plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss." Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss. 1984) (citation omitted).
¶ 20. Substantial evidence about the projected retention rate was produced by both parties to this suit. The chancellor reached a conclusion that fell between those two projected rates. We cannot say that the chancellor's conclusion was manifestly wrong or clearly erroneous. Accordingly, we find Raines's argument on this issue to be without merit.

(B) Punitive Damages
¶ 21. Generally, "[p]unitive damages are recoverable in breach of contract cases `where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort.'" Polk v. Sexton, 613 So.2d 841, 845 (Miss.1993) (quoting Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 465-66 (Miss.1983)). However, Raines asserts that he relied on the advice of counsel in accepting business from Bottrell's customers, and this reliance insulates him from the imposition of punitive damages. *648 In support of this argument, he cites to Murphree v. Federal Ins. Co., 707 So.2d 523 (Miss.1997).
¶ 22. Murphree dealt with an insurance providers denial of coverage to an insured. In its ruling, the supreme court stated that "[g]ood-faith reliance upon advice of counsel may prevent imposition of punitive damages." Murphree, 707 So.2d at 533. However, it went on to say that "advice of counsel is but one factor to be considered" and that the overall reasonableness of the defense was an issue for the finder of fact. Id.
¶ 23. In this case, the chancellor found that Raines "willfully, and with calculated intent, violated ... the Agreement" and that Raines "weighed his options and accepted this risk." There was certainly substantial evidence introduced at trial to support these findings. Accordingly, we cannot say that the chancellor was manifestly wrong or clearly erroneous in so finding, or that his imposition of punitive damages in this case was wrong as a matter of law. Therefore, we find Raines's argument on this issue to be without merit.

(C) Attorneys' Fees
¶ 24. Raines argues that the award of attorneys' fees should be overturned because of a total failure on the part of Bottrell to prove the reasonableness and necessity of the amount awarded. We review a chancellor's award of attorneys' fees for abuse of discretion. Missala Marine Servs., Inc. v. Odom, 861 So.2d 290, 296(¶ 28) (Miss.2003) (citing Turner v. Terry, 799 So.2d 25, 38(¶ 45) (Miss.2001)). Attorneys' fees are available in cases where punitive damages are awarded. Pride Oil Co., Inc. v. Tommy Brooks Oil Co., 761 So.2d 187, 192(¶ 15) (Miss.2000) (citations omitted).
¶ 25. The chancellor in this case awarded Bottrell a total of $138,867.65 in attorneys' fees. The record indicates that Bottrell provided a detailed summary of the work done by its attorneys, as well as an itemized account of the fees incurred by its expert witness. Raines's counsel had the opportunity to cross-examine Bottrell's attorneys at length over the work performed and the fees paid.
¶ 26. Furthermore, the law in this state does not require any additional offer of proof on the necessity or reasonableness of attorneys' fees. Mississippi Code Annotated section 9-1-41 states that:
In any action in which a court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation ...
Miss.Code Ann. § 9-1-41 (Rev.2002). The chancellor in this case was authorized to award attorneys' fees because of the award of punitive damages, and we cannot say he abused his discretion in arriving at the final amount or that the amount was unreasonable. Accordingly, we find Raines's argument on this issue to be without merit.

IV. The trial judge properly rejected Raines's counterclaim.
¶ 27. Raines argues that his counterclaim against Bottrell for vacation pay and unreimbursed expenses for his final two weeks was improperly rejected by the chancellor. However, Raines testified that, as a salesman working for commission, he never received vacation pay. Additionally, Raines never introduced any evidence at trial of the expenses he claims he was not reimbursed for, nor any evidence supporting why he would be entitled to them. Accordingly, we find his argument on this issue to be meritless.
*649 ¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.